STATE OF NORTH CAROLINA v. JOHN MINOR

No. 51

(Filed 14 May 1976)

Narcotics § 4— marijuana growing in field — constructive possession — insufficiency of evidence

The State's evidence was insufficient to support a finding that defendant was in constructive possession of marijuana found growing in a field, and defendant's motion for nonsuit on charges of possession of marijuana for the purpose of distribution and manufacturing and growing marijuana should have been allowed, where the evidence tended to show only that the property on which the marijuana was growing had been leased by a codefendant; defendant had been a visitor at an abandoned house on the property leased by the codefendant; the marijuana field was 100 feet away from the house and obscured by a wooded area; the marijuana field was accessible by three different routes; and defendant was a passenger in the front seat of an automobile owned and operated by the codefendant when marijuana leaves were found in the left rear floorboard and in the trunk of the automobile.

ON petition by defendant for discretionary review of the decision of the Court of Appeals, reported in 28 N.C. App. 85, 220 S.E. 2d 160 (1975), affirming the judgments of *Friday, J.,* entered at the 23 July 1975 Session of CHEROKEE County Superior Court.

Defendant was tried on indictment charging him with possession of a controlled substance, to-wit, marijuana, for the purpose of distribution, and with manufacturing and growing marijuana.

Without objection, the cases were consolidated for trial with those of co-defendant Ingram, who was charged with the same offenses as this defendant as well as another charge of concealment of a weapon.

The evidence for the State tended to show that on 22 July 1973 at 11:15 p.m. a search warrant was secured by SBI Agent

Cope to search the premises of Dale Ingram and this defendant in a rural area near Murphy, North Carolina. The affidavit to obtain the search warrant described the location of the property as follows:

"The marijuana is in a cornfield on the Bill Roberts home place on Buckhorn Creek. The property is owned by Tiny Roberts. . . . The house and marijuana field is about one-half mile up the driveway. . . . Buckhorn Creek runs through the property and near the house. There is an old house and barn below the house."

At midnight, or shortly thereafter, SBI Agent Kenneth Cope went to the Roberts' place and identified some marijuana growing in an one-acre tract there. He also identified some garden utensils, fertilizer, camping gear, items of personal property, and one bottle with the name "Minor" on it that were found in an unoccupied dwelling house at the Roberts' place known as the Moneymaker house. Later that day Cope secured warrants for the arrest of defendant herein and co-defendant Ingram.

Thereafter in the afternoon of the same day, defendants were stopped and arrested under the warrants previously secured about one-half of a mile from the Buckhorn Creek premises as they were turning from the public road. Defendant had been riding in a Volkswagen automobile owned and operated by co-defendant Ingram. The State's evidence is conflicting as to the search of this vehicle, but it appears to have been made sometime after the arrest. The officers did not have a search warrant for the vehicle. The search revealed a .22 caliber rifle on the back seat under some spools of thread and papers and a .22 caliber pistol in the glove compartment. These items belonged to co-defendant Ingram. On the left rear floorboard SBI Agent Cope said he found wilted marijuana leaves, and in the trunk he said he found a wilted marijuana leaf along with some grains of fertilizer.

It was stipulated by co-defendant Ingram that he secured consent from Mrs. Tinney Roberts for the use of the old Roberts' homeplace for the purpose of raising garden crops during 1973 and that some time before 23 July 1973 he paid her $25. Defendant Minor stipulated that he rode in the vehicle with co-defendant Ingram on the first occasion but remained in the automobile.

Defendants Minor and Ingram were from Tennessee. Defendant Minor had been seen in this general area of Cherokee County two or three times during the Spring of 1973. On one occasion, defendant Minor and Ingram said they were preparing a garden on the Roberts' place. Ingram employed someone in the Spring of 1973 to plow and break the land on the one-acre tract as well as on a quarter-acre tract which was adjacent to a house on the Roberts' place known as the Roberts' house. No controlled substance was found on the quarter-acre tract. The person that performed the ground breaking had no arrangements with defendant Minor and had never seen him.

SBI Agent Cope, who had made the search shortly after midnight, estimated that the one-acre field contained 800 or 900 pounds of marijuana. After the arrest of the two defendants, photographs were made of the vehicle, field, buildings and path. State's exhibits 2, 3 and 4 indicated a few stalks of corn close to the "tasselling stage" in the marijuana field.

The defendant's evidence tended to show the following:

The neighbor who plowed and broke the one-acre field for Ingram in which was found the marijuana told Ingram that the field was too rough to plow and that it was a bad spot for a garden. Ingram responded that he did not intend to use the spot himself but asked the neighbor to prepare the land as best he could. The neighbor indicated there were three ways to get to the field, only one of which was visible from the road.

There had been some discussion between Minor and Ingram about planting a garden. Ingram had lived in the area before and worked as a schoolteacher. A garden was planted in the one-quarter acre plot, but grass and weeds appear to have overtaken it. Both defendants denied planting in the field where the marijuana was discovered. Defendant Minor's evidence indicated that he came to the Moneymaker house (the one nearer the field where the marijuana was discovered) during the week of July 4th. Most of Minor's activities were related to camping and fishing. His sister, mother and nephew came with him in the latter part of May and again during the fourth of July period. During these periods the garden was planted. During the July 4th period Minor and family stayed in the Moneymaker house. In the house was found a little camping stove and a Coleman lantern that Minor's mother had brought. The bottle with the name "Minor" on it belonged to the mother of defend-

ant Minor and contained coal oil for the purpose of keeping chiggers off her legs. Minor had never been to the Moneymaker house before July 4th.

Each of the defendants was given an active sentence, but Ingram did not appeal.

Other pertinent facts will be discussed in the opinion.

*Attorney General Rufus L. Edmisten by Special Deputy Attorney General William F. O'Connell and Assistant Attorney General Robert R. Reilly for the State.*

*Ronald W. Howell for defendant Minor.*

COPELAND, Justice.

Defendant makes a number of assignments of error, but we first consider the question of whether the trial court committed prejudicial error in denying defendant Minor's motion for nonsuit at the close of all the evidence.

"If there is any evidence tending to prove the fact of guilt or which reasonably leads to this conclusion as a fairly logical and legitimate deduction, and not such as merely raises a suspicion or conjecture of guilt, it is for the jury to say whether they are convinced beyond a reasonable doubt of guilt." 2 Strong's N.C. Index 2d, Criminal Law § 106 at 654. *See State v. Bell,* 285 N.C. 746, 208 S.E. 2d 506 (1974) ; *State v. Cutler,* 271 N.C. 379, 156 S.E. 2d 679 (1967) ; *State v. Roberts,* 270 N.C. 655, 155 S.E. 2d 303 (1967) ; *State v. Mabry,* 269 N.C. 293, 152 S.E. 2d 112 (1967).

The State relied completely upon circumstantial evidence as to defendant Minor. In order to withstand the motion for nonsuit, there must be substantial evidence of all material elements of the offenses. It makes no difference whether the substantial evidence is circumstantial or direct or both. *State v. Stephens,* 244 N.C. 380, 93 S.E. 2d 431 (1956).

Although the cases against Minor and Ingram were consolidated for trial, the evidence certainly is not identical as to both of them.

What does the evidence show as to the defendant, John Minor, when it is taken in the light most favorable to the State, resolving all contradictions in the State's evidence in its favor

and including all the evidence whether it is competent or incompetent? It shows the following:

On 23 July 1973, shortly after midnight, SBI Agent Cope went to the Bill Roberts' homeplace in Cherokee County with a search warrant. He discovered the dilapidated Roberts' house and barn and the so-called Moneymaker house about one-half mile from an unpaved road. There was an one-quarter acre garden plot plowed and planted near the Roberts' house. The vegetable garden apparently had been neglected or abandoned. Near the Moneymaker house the agent walked down a little path to a wooded area. State's Exhibit 7, a photograph, indicates a substantial wooded area obscures the marijuana field from the Moneymaker house. He then walked through the woods and across a branch. The distance from the house along the route traveled was approximately 100 feet. On the other side of the branch he found a field of the dimensions of 400 feet by 150 feet and somewhat circular in shape. In this field were a few stalks of corn growing dispersed among the marijuana plants. The photographs taken on 23 July 1973 indicated corn in the "tasselling stage" and marijuana plants, all approximately six feet in height.

The agent then went to the Moneymaker house, and his search revealed some camping gear, weed cutters, strings, hoes, shirts, and a bottle with the name "Minor" on it which contained kerosine or coal oil.

Later on the same day in the afternoon after securing warrants, the agent arrested defendant Minor outside a red Volkswagen owned by co-defendant Ingram. There was some evidence that a search of the vehicle was made and some wilted marijuana leaves were found on the left rear floorboard. These leaves could not have been seen from outside the vehicle.

There was some evidence that a search of the trunk of the vehicle revealed some grains of fertilizer and one marijuana leaf. The only evidence linking defendant Minor to any of the items in the Volkswagen was his presence in Ingram's vehicle before his arrest.

The stipulation tended to show that Ingram had made the arrangements for the use or lease of the premises. There was nothing in it that disclosed any "knowledge" of the lease by defendant Minor. The record is devoid of any evidence making Minor a lessee of any kind.

State v. Minor

Defendant Ingram had the one-acre field plowed in which the marijuana was later discovered. It is true that the defendant Minor had been in the neighborhood two or three times with Ingram and they had discussed preparing a garden. A garden was found on the quarter-acre tract adjacent to the Roberts' house. No marijuana was found in that tract.

All the evidence pointed to Ingram as the lessee or possessor of the premises; the person who had the ground plowed; the owner and operator of the automobile in which some wilted marijuana leaves were found. Warrants had already been issued and served when the vehicle was searched. Obviously Minor is not charged with possession of any marijuana in the Volkswagen. The only possible link of Minor to the Volkswagen was his presence in the front-passenger seat prior to his arrest outside the vehicle. The only evidence linking him to the premises was a bottle in the Moneymaker house with the name "Minor" on it. His mother said it contained coal oil and belonged to her. No controlled substance was found in the Moneymaker house.

All the evidence of the State and defendant must be considered on the motion to nonsuit at the close of the case. There is nothing in the defendant's evidence to help the State's case. It simply explains Minor's presence at the scene where he was arrested.

The brief and argument of the State concedes that in order to hold Minor the State's case must rest on "constructive possession" by the defendant Minor of the field of marijuana.

Possession of narcotics may be either actual or constructive. An accused has possession of contraband materials within the meaning of the law when he has both the power and intent to control the drug or its use. Thus, when such materials are found on premises under the control of defendant, this fact gives rise to an inference of knowledge and possession which may be sufficient to take the case to the jury. *State v. Harvey,* 281 N.C. 1, 187 S.E. 2d 706 (1972). "Also, the State may overcome a motion . . . for judgment as of nonsuit by presenting evidence which places the accused within such close juxtaposition to the narcotic drugs as to justify the jury in concluding that the same was in his possession. [Citations omitted.]" *State v. Harvey, supra* at 12-13, 187 S.E. 2d at 714. In *Harvey* the facts indicated that defendant was found alone in a room in his home

some three to four feet from the marijuana. Our Court has held that this evidence supported the reasonable inference that the marijuana was in defendant's possession.

Our Court in *Harvey* and in *State v. Allen*, 279 N.C. 406, 183 S.E. 2d 680 (1971) referred to *Hunt v. State*, 158 Tex. Crim. 618, 258 S.W. 2d 320 (1953). In that case defendant was convicted of unlawful possession of marijuana. The evidence against him indicated that he had been seen at a lumber pile between two buildings reaching under the end of the pile. Later two tobacco cans full of marijuana were found in this place. This was held sufficient for a conviction.

Our Court in *State v. Spencer*, 281 N.C. 121, 187 S.E. 2d 779 (1972), held that evidence disclosing that defendant had been seen on numerous occasions in and around a pig shed where marijuana was found, this being some twenty yards from the defendant's residence, and that some marijuana seeds were found in defendant's bedroom, led to a reasonable inference that defendant exercised custody and control over the pig shed and the marijuana found therein.

In *State v. Allen, supra,* our Court held that it was sufficient to show "constructive possession" where the heroin was found in a house with the public utilities listed in defendant's name; an Army identification card and other papers bearing defendant's name were found in the same bedroom where the heroin was discovered; and a sixteen-year-old boy, having obtained heroin from the described house pursuant to defendant's instructions, sold it at defendant's direction.

In each of these cases our Court, speaking through Justice Branch, held there was sufficient evidence to go to the jury. Defendants were placed in either actual possession of the drugs or in such close juxtaposition to the drugs as to raise a reasonable inference that they controlled the contraband.

In our case the evidence does not come close to the fact situations of any of the cases discussed. About all our evidence shows is (1) that defendant Minor had been a visitor at an abandoned house leased or controlled by co-defendant Ingram; (2) that the marijuana field was 100 feet away from the house but obscured by a wooded area; (3) that the marijuana field was accessible by three different routes; (4) that on the date of Minor's arrest he was on the front seat of a Volkswagen

automobile owned and operated by Ingram, where some wilted marijuana leaves were found on the left rear floorboard and one marijuana leaf was found in the trunk.

The most the State has shown is that defendant had been in an area where he could have committed the crimes charged. Beyond that we must sail in a sea of conjecture and surmise. This we are not permitted to do. The trial judge should have allowed the motion for judgment as of nonsuit at the close of defendant's evidence. Other material assignments of error were raised, but it is unnecessary to consider these because we have concluded the trial court was in error in not granting the motion for nonsuit. The decision of the Court of Appeals is

Reversed.