STATE OF NORTH CAROLINA v. NATHANIEL JUMEL BARRON

No. COA09-770

(Filed 2 March 2010)

### 1. Drugs— constructive possession—insufficient evidence

The trial court erred in denying defendant's motion to dismiss charges of possession of controlled substances because there was insufficient evidence from which the jury could conclude that defendant constructively possessed marijuana and cocaine found by police officers in a residence which was not under defendant's exclusive control.

### 2. Fraud— identity—identifying information—sufficient evidence

The trial court did not err in denying defendant's motion to dismiss the charge of identity fraud as defendant's active acknowledgment to a police officer during an interview that the last four digits of his social security number were "2301" was a "use [of] identifying information" of another person, within the meaning of N.C.G.S. § 14-113.20(a).

### 3. Jury Instruction— identity fraud—failure to show prejudice

Even assuming _arguendo_ that the trial court's instruction to the jury on identity fraud was erroneous, defendant failed to carry his burden of proof to show that he was prejudiced by the error.

### 4. Search and Seizure— motion to suppress—fruit of the poisonous tree—subsequent crime

The trial court did not err by denying defendant's motion to suppress statements to a police officer regarding defendant's name, date of birth, and social security number made after his arrest for possession of controlled substances. Even if defendant's arrest was not supported by probable cause, the exclusion-

ary rule would not operate to exclude evidence of defendant's subsequent commission of identity fraud.

Appeal by Defendant from judgment entered 19 February 2009 by Judge James F. Ammons, Jr. in Cumberland County Superior Court. Heard in the Court of Appeals 18 November 2009.

*Attorney General Roy Cooper, by Special 'Deputy Attorney General Richard E. Slipsky, for the State.*

*Kevin P. Bradley for Defendant.*

STEPHENS, Judge.

## I. Procedural History

On 12 May 2008, Defendant Nathaniel Jumel Barron was indicted for possession with intent to sell or deliver cocaine, marijuana, and a counterfeit controlled substance; identity theft; resisting, delaying, or obstructing a police officer; and having obtained habitual felon status. The case was tried in Cumberland County Superior Court on 18 and 19 February 2009.

Prior to trial, Defendant filed a motion to suppress statements he had made to police officers. The trial court summarily denied the motion before jury selection. Also before jury selection, the State dismissed the charge of resisting, delaying, or obstructing an officer.

On 19 February 2009, the jury found Defendant guilty of possession of cocaine and marijuana, guilty of identity theft, and not guilty of possession with intent to sell or deliver a counterfeit controlled substance. Defendant then pled guilty to having obtained habitual felon status.

The trial court entered judgment on the jury verdicts, consolidating the charges and sentencing Defendant to a prison term of 133 to 169 months. Defendant gave notice of appeal in open court.

## II. Factual Background

On the night of 3 January 2008, Officer Brett Armstead of the Fayetteville Police Department was working a patrol shift. At approximately 9:55 p.m., he ran a vehicle tag through his onboard computer. The vehicle pulled into a driveway at 208 South Broad Street. Armstead continued down the road about a mile and a half until the computer signaled that the vehicle was stolen. Armstead turned around and drove back. The vehicle was still in the driveway.

The officer waited about 10 or 15 minutes and did not see any activity in the vehicle. He called for another officer, Officer Zimmerman, to assist with the stolen vehicle. Armstead and Zimmerman decided to knock on the door of the residence at 208 South Broad Street and ask routine questions of whoever answered.

Armstead first checked the vehicle. The window was open and he could see a handgun on the console. Zimmerman took possession of the weapon and called for another backup, Officer Herbert.

When Herbert arrived, he was stationed to watch the back of the house as Armstead and Zimmerman approached the front door. Armstead knocked on the front door and stepped back five or six feet. After about 10 to 12 seconds, a man answered the door and stepped outside. Armstead introduced himself and asked if he could have the man's name. The man identified himself as Clifton Dukes. Armstead then asked Dukes about the vehicle in the driveway. Dukes said that he did not know who was driving it and that it was not his. As they spoke, "the door had closed, not all the way but it was ajar. When the door reopened, the [D]efendant stepped to the door and was looking outside." Armstead could see Defendant's face, but couldn't see his hands or the rest of his body.

Armstead asked Defendant to step outside so he could speak with him. Defendant acquiesced and stepped outside, standing next to Dukes. When Armstead asked Defendant for his name, Defendant gave the name Charles Barron. Armstead then asked if the vehicle in the driveway belonged to him. Defendant replied that it was not his and he did not know who owned it. Armstead asked Dukes for identification, and Dukes said it was inside his residence. Armstead asked Dukes if he could go inside with Dukes to get it. Dukes said, "Sure, come on in." As Dukes turned around to walk inside the house, Armstead told Zimmerman to detain Defendant. Zimmerman immediately handcuffed Defendant.

Armstead called Herbert and they followed Dukes into the residence. As soon as they entered the residence, Herbert "detected a strong odor of marijuana in the house." They observed a couch to their right. Duke's girlfriend, Jacqueline Murphy, was sitting on the couch. There was also a mattress on the floor with a small child on it. Another man, Mr. Jones, was sitting behind the door to the left at the kitchen table.

Dukes leaned over to get his wallet, and as he was handing Armstead his identification, Herbert advised Armstead that he

observed narcotics on the couch to their right. Plastic baggies, which were later determined to contain marijuana and cocaine, were on the couch where Ms. Murphy was sitting and about three feet from where Defendant had been standing at the front door. Armstead informed everyone in the room that they would be detained. The officers handcuffed Dukes and Jones and brought them out of the house. Armstead left Murphy inside the house because of the small child, but told her that she was also being detained. A relative soon arrived to take the child, and Murphy was led outside as well.

After obtaining a search warrant, Armstead, Herbert, and Officer Durham searched the residence. During the search, the officers discovered a crack pipe, a metal push rod,[1] and a piece of copper Chore Boy scrubber.[2] The crack pipe was discovered about two-and-a-half feet from where Defendant had been standing at the front door. The push rod and Chore Boy were found in a trash can approximately 10 or 12 feet from where Defendant had been standing.

After the search was complete, Dukes, Jones, Murphy, and Defendant were taken to the county jail for booking. Armstead was filling out an arrest sheet regarding Defendant while Zimmerman was filling out a probable cause sheet on Defendant. Armstead was asking Defendant questions in order to complete the sheets. Defendant stated to Armstead that his name was "Charles Lee Barron," his date of birth was 2 August 1981, and his address was 213 Adams Street. Armstead asked Defendant if he knew his social security number, and Defendant replied that he did not. Armstead asked county booking to print off Charles Barron's last arrest sheet. Armstead looked at the social security number listed on that sheet and asked Defendant, "Is your last four 2301?" Defendant responded, "Yes." Armstead thus filled in the social security number on the arrest sheet for Defendant with the number listed on Charles Barron's arrest sheet. Charles Lee Barron and Defendant have the same mother. Charles' date of birth is 2 August 1981 while Defendant's date of birth is 19 November 1978.

The police subsequently discovered that Defendant had given his brother's information when they ran Defendant's electronic fingerprints through their computer system. They thus dropped the charges against Charles Barron and charged Defendant, adding the charges of identity theft and resisting, delaying, or obstructing an officer.

---

1. A push rod can be used to clean out a crack pipe or to push cocaine into the pipe.

2. A Chore Boy can be used as a filter for crack cocaine.

### III. Discussion

### A. Motion to Dismiss

[1] Defendant first argues that the trial court erred in denying his motion to dismiss the charges of possession of controlled substances for insufficient evidence. Specifically, Defendant contends there was insufficient evidence that Defendant possessed the controlled substances found in the residence. We agree.

On appeal of a trial court's denial of a motion to dismiss for insufficient evidence, this Court considers "whether substantial evidence exists as to each essential element of the offense charged and of the defendant being the perpetrator of that offense." *State v. Glover*, 156 N.C. App. 139, 142, 575 S.E.2d 835, 837 (2003). " 'The existence of substantial evidence is a question of law for the trial court, which must determine whether there is relevant evidence that a reasonable mind might accept as adequate to support a conclusion.' " *Id.* (quoting *State v. Barden*, 356 N.C. 316, 351, 572 S.E.2d 108, 131 (2002), *cert. denied*, 538 U.S. 1040, 155 L. Ed. 2d 1074 (2003)). In determining the existence of substantial evidence, "[t]he court must 'consider the evidence in the light most favorable to the State, take it to be true, and give the State the benefit of every reasonable inference to be drawn therefrom.' " *Id.* (quoting *State v. Martin*, 309 N.C. 465, 480, 308 S.E.2d 277, 286 (1983)). Thus, "[a] case should be submitted to a jury if there is any evidence tending to prove the fact in issue or reasonably leading to the jury's conclusion as a fairly logical and legitimate deduction." *State v. Harris*, 361 N.C. 400, 402-03, 646 S.E.2d 526, 528 (2007) (citations and internal quotation marks omitted). This is true "even though the evidence may support reasonable inferences of the defendant's innocence." *State v. Grigsby*, 351 N.C. 454, 457, 526 S.E.2d 460, 462 (2000) (citations and internal quotation marks omitted). However, when the evidence raises no more than a suspicion of guilt, a motion to dismiss should be granted. *State v. Miller*, 363 N.C. 96, 99, 678 S.E.2d 592, 594 (2009).

To send a charge of possession of a controlled substance, a violation of N.C. Gen. Stat. § 90-95(A), to the jury, the State must offer sufficient evidence that (1) the substance was controlled and (2) defendant knowingly possessed the substance. *See State v. Weldon*, 314 N.C. 401, 403, 333 S.E.2d 701, 702 (1985). An accused's possession of a controlled substance may be actual or constructive. *State v. Harvey*, 281 N.C. 1, 12, 187 S.E.2d 706, 714 (1972).

In this case, the State prosecuted Defendant upon a theory of constructive possession of marijuana and cocaine. A defendant constructively possesses a controlled substance when he or she has "the intent and capability to maintain control and dominion over" it. *State v. Beaver*, 317 N.C. 643, 648, 346 S.E.2d 476, 480 (1986). When narcotics "are found on the premises under the control of an accused, this fact, in and of itself, gives rise to an inference of knowledge and possession which may be sufficient to carry the case to the jury on a charge of unlawful possession." *Harvey*, 281 N.C. at 12, 187 S.E.2d at 714. However, unless a defendant has exclusive possession of the place where the contraband is found, the State must show "other incriminating circumstances" sufficient for the jury to find that a defendant had constructive possession. *State v. Matias*, 354 N.C. 549, 552, 556 S.E.2d 269, 271 (2001).

In this case, there was no evidence that Defendant had " 'exclusive possession of the place where the narcotics [were] found[.]' " *Id.* (citation omitted). Indeed, the evidence established exactly the contrary.[3] Therefore, we must determine whether there was sufficient evidence of " 'other incriminating circumstances[,]' " *id.* (citation omitted), to show that Defendant had the "intent and capability to maintain control and dominion over" the contraband. *Beaver*, 317 N.C. at 648, 346 S.E.2d at 480. We conclude that there was not.

The State contends that the following evidence is sufficient to support the charges of possession of controlled substances: When Herbert entered the residence, he noticed some plastic baggies on the couch, about three feet away from where Defendant had been standing at the front door. The baggies were later determined to contain marijuana and cocaine. Additionally, in executing a search warrant, police found a crack pipe approximately two-and-a-half feet away from where Defendant had been standing, and a push rod and a piece of Chore Boy approximately 10 or 12 feet away from where Defendant had been standing. The State also contends that Defendant acted suspiciously by standing partially hidden behind the open front door while police spoke with Dukes. The State argues the fact that Defendant lied to the police about his identity further supports its theory of constructive possession. We are not persuaded by the State's argument.

---

3. While officers found no evidence that Defendant was residing in the residence, bills found at the residence confirmed that Dukes and Murphy were residing in the home. Furthermore, Dukes, Murphy, and Jones were all present, in addition to Defendant, when officers discovered the drugs in the living room.

It is well-settled that the mere "fact that a person is present in a room where drugs are located, nothing else appearing, does not mean that person ha[d] constructive possession of the drugs." *State v. James*, 81 N.C. App. 91, 93, 344 S.E.2d 77, 79 (1986). Here, the only potential incriminating circumstance beyond Defendant's presence in the room[4] was the fact that "Defendant's actions and demeanor were suspect[.]"

The State's evidence tends to show that Armstead knocked on the door of the residence and introduced himself to Dukes when Dukes answered. Dukes gave Armstead his name and Armstead "asked him about the vehicle that was parked in his driveway." Dukes "said he didn't know who was driving that vehicle. It was not his." As they spoke, "the door had closed, not all the way but it was ajar." When the door opened again, "[D]efendant stepped to the door and was looking outside." Armstead asked Defendant "if he wouldn't mind stepping outside so I could speak with him." At that point, Defendant stepped outside and Armstead asked Defendant for his name. Defendant replied, "Charles Barron." Armstead asked Defendant "if that was his vehicle. He said no, he didn't know whose vehicle that was." The record reflects that Defendant's "actions and demeanor" resulted solely from Armstead's inquiry into the ownership of the vehicle in the driveway and, thus, are insufficient evidence of Defendant's "intent and capability to maintain control and dominion over" the controlled substances discovered in the residence. *Beaver*, 317 N.C. at 648, 346 S.E.2d at 480.

We conclude that the State's evidence showed nothing more than "[D]efendant had been in an area where he could have committed the crimes charged," and was insufficient to send the charge of possession of controlled substances to the jury. *State v. Minor*, 290 N.C. 68, 75, 224 S.E.2d 180, 185 (1976). Defendant's conviction for possession of marijuana and cocaine is reversed.

### B.  Identity Theft

[2] Defendant next argues that the trial court erred in denying Defendant's motion to dismiss the charge of identity theft for insufficient evidence. Specifically, Defendant contends there was insufficient evidence that he used "identifying information" of another person. We disagree.

A person is guilty of identity theft when that person

---

4. The evidence does not show when the drugs were placed on the couch.

knowingly obtains, possesses, or uses identifying information of another person, living or dead, with the intent to fraudulently represent that the person is the other person . . . for the purpose of avoiding legal consequences . . . .

N.C. Gen. Stat. § 14-113.20(a) (2007). Identifying information for the purposes of this statute includes "[s]ocial security or employer taxpayer identification numbers[,]" N.C. Gen. Stat. § 14-113.20(b)(1), and "[a]ny other numbers or information that can be used to access a person's financial resources." N.C. Gen. Stat. § 14-113.22(b)(10) (2007).

In the present case, Armstead testified as follows:

[State:] Tell the jury where the Social Security number [on Defendant's arrest sheet] came from. How did you fill—how did you come to fill out [xxx-xx]-2301 on the arrest report that night?

[Armstead:] I asked the [D]efendant if he happened to know his Social Security number and he said no. Due to the fact that we have no I.D. on [Defendant], I asked county booking if they could print off the last arrest sheet or a sheet that would have some biographical information on it. While we were filling this out, I was looking from the information [Defendant] was giving me to the sheet to compare. When I got to the Social Security block [of the arrest sheet] and he said he did not know his Social Security number, which is not uncommon, I asked them—I gave him the last four of the Social that was on that sheet. I asked him, "Is your last four 2301?" And he said, "Yes." So I filled in the rest of the block.

[State:] The sheet that you had that you were using that you asked the jail to give you, whose information did you give the jail to give the sheet back?

[Armstead:] Gave the name [Defendant] gave me and date of birth.

[State:] What was that name and date of birth? [Armstead:] Charles Lee Barron, August 2, 1981.

[State:] And that was—is that the sheet the jail gave you to look at?

[Armstead:] Yes. It was the last arrest sheet they had taken.

[State:] So when you said 2301, what was the [D]efendant's response?

[Armstead:] He said yes.

Defendant does not deny using his brother's name and birth date to identify himself to police. Defendant argues, however, that "agreeing with the police officer's recitation of the last four digits of that other person's social security number . . . is [not] 'use [of] identifying information' within N.C.G.S. § 14-113.20."

We decidedly disagree with Defendant's contention. We conclude that Defendant's active acknowledgment to Armstead that the last four digits of his social security number were "2301" was a "use [of] identifying information" of another person within the meaning of N.C. Gen. Stat. § 14-113.20(a).

Defendant also argues that a name or a birth date do not constitute "identifying information" within the meaning of the statute. However, having already determined that Defendant violated the statute by the use of his brother's social security number, we need not address this contention to overrule Defendant's argument that the trial court erred in denying his motion to dismiss the charge of identity theft. Defendant's identity theft argument is without merit.

*C.  Jury Instruction*

**[3]** Defendant next argues that the trial court erred in instructing the jury that "name and date of birth are 'identifying information of another person' " under N.C. Gen. Stat. § 14-113.20.

A trial court must instruct the jury on the law arising on the evidence. *State v. James,* 184 N.C. App. 149, 151, 646 S.E.2d 376, 377 (2007); *see* N.C. Gen. Stat. §§ 15A-1231 and -1232 (2007). "The chief purpose of a [jury] charge is to give a clear instruction which applies the law to the evidence in such manner as to assist the jury in understanding the case and in reaching a correct verdict." *State v. Williams,* 280 N.C. 132, 136, 184 S.E.2d 875, 877 (1971). Whether a jury instruction correctly explains the law is a question of law, reviewable by this Court *de novo. Staton v. Brame,* 136 N.C. App. 170, 174, 523 S.E.2d 424, 427 (1999).

On appeal, a defendant is required not only to show that a challenged jury instruction was erroneous, but also that such error prejudiced the defendant. N.C. Gen. Stat. § 15A-1442(4)(d) (2007); *see State v. Easterling,* 300 N.C. 594, 609, 268 S.E.2d 800, 809 (1980) (In order to warrant corrective relief by the appellate division, "error in the judge's instructions to the jury must be to the prejudice of defendant[.]"). "A defendant is prejudiced . . . when there is a reason-

able possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises." N.C. Gen. Stat. § 15A-1443(a) (2007). "The burden of showing such prejudice . . . is upon the defendant." *Id.*

On the charge of identity theft, the trial court instructed the jury in pertinent part as follows:

> For you to find the [D]efendant guilty of [identity theft], the state must prove . . . beyond a reasonable doubt . . . that [D]efendant obtained or possessed or used personal identifying information of another person. The name, the date of birth[,] or the Social Security number would be personal identifying information.

"[D]efendant argues only that the trial court erred in its jury instructions and never addresses the effect of the error on the jury's verdict." *State v. Hutchinson*, 139 N.C. App. 132, 139, 532 S.E.2d 569, 574 (2000). Therefore, even assuming *arguendo* that the challenged instruction was erroneous as a matter of law, Defendant has failed to carry his burden of proof to show he was prejudiced by the alleged error. *Id.* The assignment of error upon which Defendant's argument is based is overruled.

### D. Motion to Suppress

[4] By Defendant's final argument, he asserts that the trial court erred in denying his motion to suppress his statements regarding his false name, date of birth, and social security number. Specifically, Defendant argues that he was arrested without probable cause, in violation of his Fourth Amendment rights, and therefore, his false statements to the police should have been excluded as " 'fruit of the poisonous tree.' "

We need not determine whether Defendant was arrested without probable cause, however, because even if the arrest violated Defendant's Fourth Amendment rights, the exclusionary rule would not operate to exclude evidence of Defendant's subsequent identity theft.

The Fourth Amendment protects the right of individuals to be free from "unreasonable searches and seizures." U.S. Const. amend. IV. This protection is applicable to the states through the Due Process Clause of the Fourteenth Amendment. *Mapp v. Ohio*, 367 U.S. 643, 655, 6 L. Ed. 2d 1081, 1090, *reh'g denied*, 368 U.S. 871, 7 L. Ed. 2d 72 (1961). "When evidence is obtained as the result of

illegal police conduct, not only should that evidence be suppressed, but all evidence that is the 'fruit' of that unlawful conduct should be suppressed." *State v. Pope*, 333 N.C. 106, 113-14, 423 S.E.2d 740, 744 (1992) (citing *Wong Sun v. United States*, 371 U.S. 471, 9 L. Ed. 2d 441 (1963)).

However, an invalid search and seizure, in violation of a defendant's Fourth Amendment rights, does not give that defendant a license to engage in subsequent criminal behavior. *See State v. Miller*, 282 N.C. 633, 194 S.E.2d 353 (1973) (defendant's subsequent criminal behavior not excused even though officers entered the premises on an invalid search warrant); *In re J.L.B.M.*, 176 N.C. App. 613, 625, 627 S.E.2d 239, 247 (2006) (officer's invalid stop of defendant's vehicle did not give defendant license to subsequently lie about his identity to the officer). Accordingly, the exclusionary rule does not operate to exclude evidence of crimes committed subsequent to an illegal search and seizure. *State v. Parker*, 188 N.C. App. 616, 618, 655 S.E.2d 860, 862 (2008).

In this case, Defendant made false statements to officers regarding his name, date of birth, and social security number after his arrest for possession of controlled substances. Therefore, even assuming *arguendo* that Defendant's arrest was not supported by probable cause, Defendant's false statements to the police would not have been excluded as " 'fruit of the poisonous tree.' " *Wong Sun*, 371 U.S. at 488, 9 L. Ed. 2d at 455. Defendant's argument is overruled.

REVERSED in part; NO ERROR in part; REMANDED for resentencing.[5]

McGEE and STEELMAN concur.

---

[5]. In light of the reversal of Defendant's convictions for possession of marijuana' and possession of cocaine, the trial court must resentence Defendant based solely on his conviction for identity theft.