STATE OF NORTH CAROLINA v. MICHAEL DUSTIN SLAUGHTER

No. COA10-844

(Filed 17 May 2011)

**1. Drugs— constructive possession of marijuana—proximity**

The trial court did not err by denying defendant's motion to dismiss the charge of possession with intent to distribute marijuana where there was substantial evidence of constructive possession based on proximity alone. This was not a case in which any of the individuals detained might have had control over a single baggie of marijuana or in which defendant may have had no knowledge of the contraband. Defendant was found in a 150-square-foot room with bags of marijuana and paraphernalia in plain view.

**2. Drugs— possession of paraphernalia—proximity**

The trial court did not err by denying defendant's motion to dismiss the charge of possession of drug paraphernalia based on proximity.

STATE v. SLAUGHTER

[212 N.C. App. 59 (2011)]

Judge HUNTER, Robert C., dissents by separate opinion.

Appeal by defendant from judgments entered 17 March 2010 by Judge W. Erwin Spainhour in Lincoln County Superior Court. Heard in the Court of Appeals 15 December 2010.

*Attorney General Roy Cooper, by Assistant Attorney General Mary S. Mercer, for the State.*

*David M. Black for defendant.*

ELMORE, Judge.

A jury found Michael Dustin Slaughter (defendant) guilty of possession with intent to distribute marijuana and possession of drug paraphernalia. Defendant now appeals. After careful consideration, we find no error.

## I. Background

On 29 January 2009, the Lincoln County Sheriff's Department (Sheriff's Department) executed a search warrant for the residence of Corey Howard. Several officers and detectives, as well as a SWAT team, entered Howard's mobile home between 6 and 7 p.m. Officers detained four people inside the mobile home—Howard's mother and three white males, including defendant. Officers believed that Howard was inside the mobile home when they executed the search warrant; they had seen him go into the mobile home around 6 p.m. and had not seen him leave. However, they did not find him inside the home. The mobile home had a back door, though none of the officers saw Howard leave through the back door; no officers were specifically watching the back door before the SWAT team knocked and announced.

Five members of the Sheriff's Department testified at trial: Detective Lonnie Leonard, Detective Jesse Helms, Detective Billy Benton, Officer Lester White, and Lieutenant Toby Szykula. Lieutenant Szykula was overseeing the SWAT team that evening, and he "pounded on the side of the house and announced" that the Sheriff's Department was executing a search warrant. Lieutenant Szykula heard no response from inside the mobile home. Eight to ten seconds later, other SWAT team members breached the front door and deployed a "flashbang" distraction device. To ensure everyone's safety, SWAT team members immediately entered the home and

STATE v. SLAUGHTER

[212 N.C. App. 59 (2011)]

"secur[ed] every room in the house, putting people in custody, securing people, placing them on the floor until [the tactical team] kn[ew] that the whole residence [was] secured." Lieutenant Szykula entered the home about five seconds after the first officer and saw a deputy detaining Howard's mother in the front room and other officers detaining three men in one of the bedrooms. Detective Benton estimated the size of the bedroom as ten by fifteen feet.

Detective Leonard was also a member of the SWAT team that evening, and he also entered the home immediately after the flash-bang device went off. When he entered the home, he also saw a deputy detaining Howard's mother in the front room. He entered the left bedroom and saw three white males on the floor of the bedroom. He was the second or third officer to enter the bedroom, and the first officer had "already placed everybody on the floor[.]" Detective Leonard "noticed a strong smell of marijuana in the house" and "a few bags of marijuana . . . scattered around the room." In the bathroom, which was accessible only from the bedroom, he saw stacks of twenty and hundred dollar bills, plastic sandwich baggies, and stems and other small pieces of marijuana in the sink.

Detective Benton entered the home "just behind the tactical team" after the home was secured. He went into the left bedroom and saw defendant and two other men lying on the bedroom floor, being secured by tactical officers. He saw marijuana residue on a table next to the bed, three individual baggies of marijuana in a dresser, a gallon bag containing "a bunch of smaller bags packaged for sale on the bed[,]" and a 9 millimeter pistol lying on the couch. He also smelled a strong odor of marijuana.

Officer White entered the home "three or four minutes" after the tactical team opened the front door, and when he went into the left bedroom, he saw the 9 millimeter pistol, several baggies of marijuana, and a gallon bag of marijuana, all "out in the open."

Detective Helms also entered the home after the tactical team had secured it. When he went into the left bedroom, he also saw marijuana, the 9 millimeter gun, and cash in plain view. There was also an open safe in the bathroom. The safe contained another handgun.

Eventually, officers recovered the following from the bedroom and attached bathroom: three handguns, digital scales, a lockbox, a box of plastic Ziploc-style bags, a large Ziploc-style bag containing marijuana packed in smaller bags, blunt wraps, a grinder, a cigar tube, "some tore up parts of a cigar that has been used to roll a mar-

ijuana cigarette," a knife, a ledger, $7,000.00 in cash in the bathroom sink, $7,182.00 in cash from elsewhere in the bathroom, and $24,500.00 in a white bag in the bedroom. Officers also recovered $8,000.00 in cash from a car parked in the driveway of the mobile home. The State did not offer testimony as to the total weight of the marijuana found in the bedroom, but Detective Leonard did testify that he estimated that each small bag of marijuana found in plain view to be "roughly a quarter of an ounce size bag," or the size of a "golf ball[.]"

At the close of the State's evidence, defendant moved to dismiss the three charges of conspiracy, possession with intent to distribute marijuana, and possession of drug paraphernalia. The trial court dismissed the conspiracy charge, but denied defendant's motion as to the two possession charges. Defendant offered no evidence at trial. He renewed his motion after the close of all of the evidence. The trial court denied defendant's motion and submitted the two possession charges to the jury.

The jury found defendant guilty of both felony possession with intent to distribute marijuana and misdemeanor possession of drug paraphernalia. Defendant was sentenced as a level three offender. For the felony conviction, the trial court imposed an intermediate punishment of six to eight months' imprisonment, suspended, subject to thirty-six months' supervised probation. Defendant was also ordered to serve an active term of thirty days in the custody of the Lincoln County Sheriff and to pay jail fees. For the misdemeanor conviction, defendant was sentenced to 120 days' imprisonment, suspended, subject to thirty-six months' supervised probation.

On 18 March 2010, defendant moved the trial court for appropriate relief, contending that the evidence was insufficient to justify submission of the case to the jury. The trial court denied defendant's motion by written order on 6 April 2010. Defendant now appeals.[1]

_____

1. We remind counsel that appeals taken after 1 October 2009 should not include Assignments of Error; instead, appellants should include Proposed Issues on Appeal. *See* N.C.R. App. P. 10(b) (2009) ("Proposed issues that the appellant intends to present on appeal shall be stated without argument at the conclusion of the record on appeal in a numbered list. Proposed issues on appeal are to facilitate the preparation of the record on appeal and shall not limit the scope of the issues presented on appeal in an appellant's brief.").

## II. Arguments

### A. Possession with intent to distribute marijuana

**[1]** Defendant first argues that the trial court erred by denying his motion to dismiss the possession with intent to distribute marijuana because the State did not present sufficient evidence that defendant was in possession of the marijuana.

> When ruling on a motion to dismiss for insufficient evidence, the trial court *must consider the evidence in the light most favorable to the State, drawing all reasonable inferences in the State's favor.* Any contradictions or conflicts in the evidence are resolved in favor of the State, and evidence unfavorable to the State is not considered. The trial court must decide only whether there is substantial evidence of each essential element of the offense charged and of the defendant being the perpetrator of the offense. Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. When the evidence raises no more than a suspicion of guilt, a motion to dismiss should be granted. However, so long as the evidence supports a reasonable inference of the defendant's guilt, a motion to dismiss is properly denied even though the evidence also permits a reasonable inference of the defendant's innocence.

*State v. Miller*, 363 N.C. 96, 98-99, 678 S.E.2d 592, 594 (2009) (quotations and citations omitted; emphasis added). "The denial of a motion to dismiss for insufficient evidence is a question of law, which this Court reviews *de novo*." *State v. Bagley*, 183 N.C. App. 514, 523, 644 S.E.2d 615, 621 (2007) (internal quotation marks and citations omitted).

Per N.C. Gen. Stat. § 90-95(a), it is "unlawful for any person . . . [t]o . . . possess with intent to . . . sell or deliver[] a controlled substance[.]" N.C. Gen. Stat. § 90-95(a)(1) (2009). "The offense of possession with intent to sell or deliver has three elements: (1) possession of a substance; (2) the substance must be a controlled substance; and (3) there must be intent to sell or distribute the controlled substance." *State v. Nettles*, 170 N.C. App. 100, 105, 612 S.E.2d 172, 175 (2005) (quotations and citations omitted). The only element at issue here is possession. At trial, the State proceeded on a theory of constructive possession.

> A defendant constructively possesses contraband when he or she has the intent and capability to maintain control and dominion over it. The defendant may have the power to control either alone

or jointly with others. Unless a defendant has exclusive possession of the place where the contraband is found, the State must show other incriminating circumstances sufficient for the jury to find a defendant had constructive possession. *State v. Matias*, 354 N.C. 549, 552, 556 S.E.2d 269, 271 (2001).

*Miller*, 363 N.C. at 99, 678 S.E.2d at 594 (quotations and additional citations omitted). "Our determination of whether the State presented sufficient evidence of incriminating circumstances depends on the totality of the circumstances in each case. No single factor controls, but ordinarily *the questions will be for the jury*." *State v. Alston*, 193 N.C. App. 712, 716, 668 S.E.2d 383, 386-87 (2008) (quotations and citation omitted), *aff'd per curiam*, 363 N.C. 367, 677 S.E.2d 455 (2009). This Court has previously listed the following actions by a defendant as incriminating circumstances relevant to constructive possession:

> (1) owned other items found in proximity to the contraband; (2) was the only person who could have placed the contraband in the position where it was found; (3) acted nervously in the presence of law enforcement; (4) resided in, had some control of, or regularly visited the premises where the contraband was found; (5) was near contraband in plain view; or (6) possessed a large amount of cash.

*Id.*, 363 N.C. at 367, 668 S.E.2d at 386 (quotations and citation omitted).

However, the Supreme Court's most recent opinion addressing constructive possession focused on a "defendant's proximity to the contraband and indicia of [a] defendant's control over the place where the contraband is found." *Miller*, 363 N.C. at 100, 678 S.E.2d at 595. In *Miller*, the defendant did not have exclusive control over the premises where the contraband was found, but he was "sitting on the same end of" a bed from which a small rock of cocaine was recovered, he was "within reach" of a package of cocaine resting behind a door, his "birth certificate and state-issued identification card were found on top of a television stand in th[e] bedroom[,]" and the bedroom was in a home in which two of his children lived with their mother. *Id.* at 100, 678 S.E.2d at 595.

Here, without question, defendant did not have exclusive control over the place where the contraband was found. In addition, there was no evidence that he owned any other items found in proximity to the contraband, that he was the only person who could have placed

the contraband in the positions where it was found, that he acted nervously in front of law enforcement personnel, that he resided in or regularly visited the premises where the contraband was found, or that he possessed a large amount of cash on his person. Accordingly, the primary evidence supporting defendant's constructive possession of the marijuana was his proximity to the contraband.

In this case, defendant was in a 150-square-foot room surrounded by bags of marijuana, marijuana residue, stacks of cash, bags of cash, handguns, blunts, rolling papers, a grinder, and packaging paraphernalia such as plastic baggies and scales. Many of these items were in plain view of law enforcement personnel when they entered the room, including several baggies of marijuana, marijuana residue, several stacks of cash, at least one handgun, and plastic baggies. In addition, almost all of the officers testified that a strong smell of marijuana pervaded the mobile home. This was not a case in which any of the three individuals detained in that bedroom might have had control over a single baggie of marijuana. *See State v. Richardson*, ___ N.C. App. ___, ___, 689 S.E.2d 188, 190 (2010) (concluding that there was insufficient evidence of constructive possession when the defendant and several other men ran out the back door and, when they were apprehended in the back yard, officers found a plastic baggie containing a 9.4-gram crack rock two feet from the defendant, who was about two feet from the other men), *disc. rev. denied*, 364 N.C. 246, 699 S.E.2d 643 (2010). Nor was this a case in which defendant may not have had knowledge of the contraband in his proximity. *See State v. Balsom*, 17 N.C. App. 655, 655, 658, 195 S.E.2d 125, 125, 128 (1973) (reversing possession of narcotics judgments when the State presented no evidence that the defendants knew of the narcotics, which were found in a closed dresser drawer and a closet). As the trial judge explained to defendant during sentencing, "This is not a little mistake, being in a place where there is $38,000 of illegal drug funds sitting around a house and pounds of marijuana. I mean, the evidence, if you look at the pictures you can tell, you were in a place that anyone should never be."

We are also cognizant that three justices dissented from the Supreme Court's decision in *Miller*, and one of those justices lamented that *Miller* "effectively nullifie[d] the substantial evidence requirement in constructive possession cases, thereby giving the State free reign to prosecute anyone who happens to be at the wrong place at the wrong time[,]" thereby "swing[ing] open the door for prosecutors to charge, try, and convict individuals across North

Carolina of possession of controlled substances or other contraband on the basis of mere proximity." *Miller*, 363 N.C. at 110-11, 678 S.E.2d at 601 (Brady, J., dissenting). Nevertheless, we conclude that the State presented far more evidence of defendant's proximity to and knowledge of the contraband here than it did in *Miller*. Viewing the evidence in the light most favorable to the State, drawing all reasonable inferences in the State's favor, and resolving all contradictions in the evidence in favor of the State, we conclude that there is substantial evidence that defendant constructively possessed the marijuana in the bedroom and the matter was properly submitted to the jury. Accordingly, we hold that the trial court did not err by denying defendant's motion to dismiss the charge of possession with intent to distribute marijuana.

## B. Possession of drug paraphernalia

[2] Defendant next argues that the trial court erred by denying his motion to dismiss the charge of possession of drug paraphernalia. Again, defendant challenges the element of possession. Again, we hold that the trial court properly denied defendant's motion to dismiss.

Our General Statutes define the misdemeanor crime of possession of drug paraphernalia as follows:

> It is unlawful for any person to knowingly . . . possess with intent to use, drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, package, repackage, store, contain, or conceal a controlled substance which it would be unlawful to possess, or to inject, ingest, inhale, or otherwise introduce into the body a controlled substance which it would be unlawful to possess.

N.C. Gen. Stat. § 90-113.22(a) (2009). The preceding statute section defines drug paraphernalia as "all equipment, products and materials of any kind that are used to facilitate, or intended or designed to facilitate, violations of the Controlled Substances Act[.]" N.C. Gen. Stat. § 90-113.21(a) (2009). The statute lists examples of drug paraphernalia, which includes the following relevant items: "[s]cales and balances for weighing or measuring controlled substances"; "[c]apsules, balloons, envelopes and other containers for packaging small quantities of controlled substances"; "[c]ontainers and other objects for storing or concealing controlled substance"; "[o]bjects for ingesting, inhaling, or otherwise introducing marijuana . . . into the body[.]" N.C. Gen. Stat. § 90-113.21(a)(5), (9), (10), (12) (2009).

**STATE v. SLAUGHTER**

[212 N.C. App. 59 (2011)]

(b) The following, along with all other relevant evidence, may be considered in determining whether an object is drug paraphernalia:

\* \* \*

(3) The proximity of the object to a violation of the Controlled Substances Act;

(4) The proximity of the object to a controlled substance;

\* \* \*

(6) The proximity of the object to other drug paraphernalia;

N.C. Gen. Stat. § 90-113.21(b)(3)-(6) (2009).

Here, officers recovered scales, Ziploc-style baggies, cigars, cigar wrappers, and a grinder in close proximity to a substantial amount of marijuana and to each other. For the same reasons set out above, there is sufficient evidence that defendant constructively possessed these items to submit a charge of possession of drug paraphernalia to a jury. Accordingly, we hold that the trial court did not err by denying defendant's motion to dismiss the charge of possession of drug paraphernalia.

### III. Conclusion

We hold that defendant received a trial free from error.

No error.

Judge CALABRIA concurs.

Judge HUNTER, Robert C., dissents by separate opinion.

HUNTER, Robert C., Judge, dissenting.

I disagree with the majority's conclusion that the evidence in this case is sufficient to support a reasonable inference that defendant constructively possessed the marijuana and drug paraphernalia found in the bedroom in which he and two other individuals were detained. As the trial court should have granted defendant's motion to dismiss the related charges for insufficient evidence, I dissent.

"When considering a motion to dismiss, the trial court's inquiry is limited to a determination of 'whether there is substantial evidence of each essential element of the offense charged and of the defendant being the perpetrator of the offense.' " *State v. Butler*, 356 N.C. 141,

145, 567 S.E.2d 137, 139 (2002) (quoting *State v. Crawford*, 344 N.C. 65, 73, 472 S.E.2d 920, 925 (1996)). "Substantial evidence is that amount of relevant evidence necessary to persuade a rational juror to accept a conclusion." *State v. Scott*, 356 N.C. 591, 597, 573 S.E.2d 866, 869 (2002). While the trial court, in determining the sufficiency of the evidence, is required to consider the evidence in the light most beneficial to the State, making all reasonable inferences from the evidence in favor of the State, as well as resolving all contradictions and discrepancies in its favor, *In re Vinson*, 298 N.C. 640, 656, 260 S.E.2d 591, 602 (1979), " '[e]vidence which merely shows it possible for the fact in issue to be as alleged, or which raises a mere conjecture that it is so, is an insufficient foundation for a verdict and should not be left to the jury[,]' " *State v. Madden*, 212 N.C. 56, 60, 192 S.E. 859, 861 (1937) (quoting *State v. Vinson*, 63 N.C. 335, 338 (1869)). If the evidence is "sufficient only to raise a suspicion or conjecture as to either the commission of the offense or the identity of the defendant as the perpetrator, the motion to dismiss must be allowed," even if "the suspicion aroused by the evidence is strong." *State v. Malloy*, 309 N.C. 176, 179, 305 S.E.2d 718, 720 (1983); accord *State v. Stone*, 323 N.C. 447, 452, 373 S.E.2d 430, 433 (1988) ("[A] motion to dismiss should be allowed where the facts and circumstances warranted by the evidence do no more than raise a suspicion of guilt or conjecture since there would still remain a reasonable doubt as to defendant's guilt.").

It is well established that the State may obtain a conviction for a possessory offense by establishing that the defendant either had actual or constructive possession of the contraband. *State v. Harvey*, 281 N.C. 1, 12, 187 S.E.2d 706, 714 (1972). "A person has actual possession of [a thing] if it is on his person, he is aware of its presence, and either by himself or together with others he has the power and intent to control its disposition or use." *State v. Reid*, 151 N.C. App. 420, 428-29, 566 S.E.2d 186, 192 (2002). In contrast, "[a] person is in constructive possession of a thing when, while not having actual possession, he has the intent and capability to maintain control and dominion over that thing." *State v. Beaver*, 317 N.C. 643, 648, 346 S.E.2d 476, 480 (1986). When, however, the defendant does not have exclusive possession of the place where the contraband is found, constructive possession "exists only upon a showing of some independent and incriminating circumstance, beyond mere association or presence," linking the defendant to the contraband. *State v. Alston*, 131 N.C. App. 514, 519, 508 S.E.2d 315, 318 (1998). "As the terms 'intent' and 'capability' suggest, constructive possession depends on

the totality of circumstances in each case," and thus "ordinarily the question will be for the jury." *State v. James*, 81 N.C. App. 91, 93, 344 S.E.2d 77, 79 (1986).

The majority relies almost exclusively on our Supreme Court's decision in *State v. Miller*, 363 N.C. 96, 678 S.E.2d 592 (2009), for its "conclu[sion] that there is substantial evidence that defendant constructively possessed the marijuana [and drug paraphernalia] in the bedroom and the matter was properly submitted to the jury." In *Miller*, after observing that "the defendant's proximity to the contraband and indicia of the defendant's control over the place where the contraband is found" are "two factors frequently considered" in determining whether the evidence is sufficient to support a reasonable inference of constructive possession, the Court concluded that the evidence was sufficient to withstand the defendant's motion to dismiss:

> Here, police found defendant in a bedroom of the home where two of his children lived with their mother. When first seen, defendant was sitting on the same end of the bed where cocaine was recovered. Once defendant slid to the floor, he was within reach of the package of cocaine recovered from the floor behind the bedroom door. Defendant's birth certificate and state-issued identification card were found on top of a television stand in that bedroom. The only other individual in the room was not near any of the cocaine. Even though defendant did not have exclusive possession of the premises, these incriminating circumstances permit a reasonable inference that defendant had the intent and capability to exercise control and dominion over cocaine in that room.

*Id.* at 100, 678 S.E.2d at 595.

In comparing the evidence in this case to the evidence presented in *Miller*, the majority concedes—and I agree—that "the primary evidence supporting defendant's constructive possession of the marijuana [and drug paraphernalia] was his proximity to the contraband":

> without question, defendant did not have exclusive control over the place where the contraband was found. In addition, there was no evidence that he owned any other items found in proximity to the contraband, that he was the only person who could have placed the contraband in the positions where it was found, that he acted nervously in front of law enforcement personnel, that he resided in or regularly visited the premises where the contra-

band was found, or that he possessed a large amount of cash on his person.

The majority nonetheless concludes that "the State presented far more evidence of defendant's proximity to and knowledge of the contraband here than it did in *Miller.*" With this conclusion, I strongly disagree.

With respect to proximity, this Court has cautioned:

> Necessarily, power and intent to control the contraband material can exist only when one is aware of its presence. Therefore, evidence which places an accused within close juxtaposition to [contraband] *under circumstances giving rise to a reasonable inference that he knew of its presence* may be sufficient to justify the jury in concluding that it was in his possession. "However, mere proximity to persons or locations with [contraband] about them is usually insufficient, *in the absence of other incriminating circumstances,* to convict for possession."

*State v. Weems,* 31 N.C. App. 569, 571, 230 S.E.2d 193, 194 (1976) (quoting B. Finberg, Annotation, *What constitutes "possession" of a narcotic drug proscribed by § 2 of the Uniform Narcotic Drug Act,* 91 A.L.R.2d 810, 811 (1963)) (emphasis added); *accord State v. Barron,* —— N.C. App. ——, ——, 690 S.E.2d 22, 27 ("It is well-settled that the mere 'fact that a person is present in a room where drugs are located, nothing else appearing, does not mean that person ha[d] constructive possession of the drugs.'" (quoting *James,* 81 N.C. App. at 93, 344 S.E.2d at 79)), *disc. review denied,* —— N.C. ——, 700 S.E.2d 926 (2010).

Here, the evidence presented at trial, even when considered in the light most favorable to the State, as is required in reviewing the denial of a motion to dismiss for insufficient evidence, tends to show only that defendant and two other individuals were detained by the tactical team and placed on the floor of a 10-by-15 foot bedroom in the back of the mobile home, which had a pervasive odor of marijuana. Inside the bedroom, police found, in plain view, numerous bags—some small, some large—containing marijuana, approximately $38,000 in cash, several firearms, a grinder, and a digital scale. Stacks of $20 and $100 bills, plastic sandwich baggies, and marijuana residue were found in the bathroom adjoining the bedroom.

As defendant points out in his brief, the State presented absolutely no evidence of defendant's proximity to the contraband prior to being "plac[ed] . . . on the floor" face down in the bedroom

where the contraband was found, *see Miller*, 363 N.C. at 100, 678 S.E.2d at 595 (noting, in holding evidence was sufficient to support finding of constructive possession, that, "*[w]hen first seen*, defendant was sitting on the same end of the bed where cocaine was recovered" (emphasis added)), defendant's proximity to the contraband after being placed on the floor, *see id.* (observing that defendant, when ordered by police officers to get on the floor, "slid to the floor" where he was then "within reach" of package containing cocaine), or defendant's proximity to the contraband relative to the other two individuals detained in the room, *see id.* (noting that while defendant near cocaine, "[t]he only other individual in the room was not near any of the cocaine"); *State v. Richardson*, —— N.C. App. ——, ——, 689 S.E.2d 188, 191-92 (vacating cocaine possession conviction for insufficient evidence of constructive possession where defendant and two other men detained in backyard, defendant was "about two feet" from package of crack cocaine, but other two men were roughly equidistant from contraband), *disc. review denied*, 364 N.C. 246, 699 S.E.2d 643 (2010). In short, "[t]he most the State has shown is that defendant [was] in an area where he could have committed the crimes charged." *State v. Minor*, 290 N.C. 68, 75, 224 S.E.2d 180, 185 (1976).

Without evidence of proximity, we are left only with presence. Despite the fact-intensive nature of the inquiry into whether there is substantial evidence of constructive possession, our caselaw is quite clear that "mere presence in a room where [contraband] [is] located does not itself support an inference of constructive possession." *James*, 81 N.C. App. at 96, 344 S.E.2d at 81; *accord State v. Acolatse*, 158 N.C. App. 485, 490, 581 S.E.2d 807, 811 (2003) ("[T]there must be more than mere association or presence linking the person to the item in order to establish constructive possession[.]"). Without "a showing of some independent and incriminating circumstance, beyond mere association or presence," *Alston*, 131 N.C. App. at 519, 508 S.E.2d at 318, there is insufficient evidence to support a reasonable inference of constructive possession. *See, e.g., Barron*, —— N.C. App. at ——, 690 S.E.2d at 27 ("The State contends that the following evidence is sufficient to support the charges of possession of controlled substances: When [Officer] Herbert entered the residence, he noticed some plastic baggies on the couch, about three feet away from where Defendant had been standing at the front door. The baggies were later determined to contain marijuana and cocaine. Additionally, in executing a search warrant, police found a crack pipe approximately two-and-a-half feet away from where Defendant had

been standing, and a push rod and a piece of Chore Boy approximately 10 or 12 feet away from where Defendant had been standing. . . . We are not persuaded by the State's argument.").

Nor does the evidence that the contraband was in plain view in the bedroom take this case out of the realm of conjecture. The contraband being in plain view suggests that defendant knew of its presence, but there is no evidence—and the majority points to none—indicating that defendant had "the *intent and capability* to maintain control and dominion over it." *James*, 81 N.C. App. at 93, 344 S.E.2d at 79 (emphasis in original). I have found no North Carolina appellate decision—and the majority cites to none—where a defendant's mere presence in a location where contraband is visible is sufficient to support a conviction for a possessory offense based on constructive possession. Our State's jurisprudence has always required more. *See, e.g.*, *State v. Kraus*, 147 N.C. App. 766, 770, 557 S.E.2d 144, 148 (2001) (finding "sufficient incriminating circumstances exist[ed] to infer that defendant had the intent and capability to maintain control and dominion" over marijuana and drug paraphernalia found in motel room where, in addition to evidence showing that defendant and another person were "in *a small* motel room filled with marijuana smoke" with "a quantity of marijuana and drug paraphernalia . . . in *plain view*," evidence also showed that "[d]efendant was 'stoned,'" had "spent the previous night in the motel room," and had "equal access to the room key" (emphasis added)).

In this case, I believe, contrary to the majority's holding, that the State presented less evidence—not more—of incriminating circumstances than it did in *Miller*. To uphold the trial court's denial of defendant's motion to dismiss, as the majority does in this case, means that "mere association or presence," *Alston*, 131 N.C. App. at 519, 508 S.E.2d at 318, without more, is now sufficient to establish constructive possession. I decline to set sail on such a dangerous "sea of conjecture and surmise." *Minor*, 290 N.C. at 75, 224 S.E.2d at 185. I must, therefore, respectfully dissent.