IN THE SUPREME COURT OF NORTH CAROLINA

2021-NCSC-66

No. 261A20

Filed 11 June 2021

STATE OF NORTH CAROLINA

v.

CHARLES BLAGG

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 271 N.C. App. 276 (2020), finding no error in a judgment entered on 29 January 2018 by Judge Gary M. Gavenus in Superior Court, Buncombe County. Heard in the Supreme Court on 22 March 2021.

*Joshua H. Stein, Attorney General, by Nicholas R. Sanders, Assistant Attorney General, for the State-appellee.*

*Sean P. Vitrano for defendant-appellant.*

MORGAN, Justice.

¶ 1      In this appeal, we consider whether the trial court erred in denying defendant's motion to dismiss a charge of possession with intent to sell or deliver methamphetamine. In the trial court as well as in the Court of Appeals, defendant argued that the evidence presented by the State, while sufficient to support a charge of possession of methamphetamine, was insufficient to send to the jury the greater charge of possession with intent to sell or deliver methamphetamine. The majority of the Court of Appeals disagreed with defendant's position and found no error in his

trial and conviction. Viewing the evidence adduced at trial in the light most favorable to the State and considering the totality of the circumstances presented in this case, we hold that the evidence here was sufficient to withstand defendant's motion to dismiss the greater charge and to permit the jury to resolve the question of whether the State met its burden to prove beyond a reasonable doubt that defendant possessed methamphetamine with the intent to sell or deliver. Accordingly, we affirm the majority decision of the lower appellate court.

## I.    Factual Background and Procedural History

¶ 2            According to evidence presented at trial in this case, on the evening of 4 January 2017, Darrell Maxwell, a detective with the Buncombe County Sheriff's Office, joined two other deputies in the surveillance of a residence in Weaverville that had been the subject of complaints of illegal drug activity. Maxwell observed a vehicle arrive at the residence and park in the driveway. The detective then saw a man exit the vehicle and enter the surveilled home. Due to the encroaching darkness of the evening, Maxwell did not see the individual leave the residence, but after about ten minutes, Maxwell saw the lights of the vehicle illuminate as it departed from the driveway. Maxwell followed the vehicle in his unmarked patrol car, and after witnessing the vehicle cross the double yellow center line on a portion of the road described by the detective as a "blind curve," Maxwell initiated a traffic stop by activating his patrol car's blue lights. Defendant, who was identified by Maxwell as

the operator of the vehicle he stopped, acknowledged having crossed the double yellow center line when Maxwell explained to defendant the reason for the traffic stop. Maxwell obtained defendant's driver's license, performed a records check, and then asked defendant to exit defendant's vehicle so that Maxwell could perform a pat-down of defendant's person. Defendant consented to the pat-down, during which Maxwell discovered a pocketknife.

By this point in the traffic stop, Deputy Jake Lambert, a K-9 handler with the Buncombe County Sheriff's Office, had arrived on the scene to assist. Maxwell asked defendant whether defendant had any contraband in his vehicle,[1] and Maxwell specifically named several controlled substances, including methamphetamine and marijuana. Defendant denied the presence of any such illegal drugs. When Maxwell asked defendant if Maxwell could search defendant's vehicle, defendant replied, "not without a warrant." Maxwell asked Lambert to employ the K-9 to conduct an open-air sniff of defendant's vehicle, while Maxwell issued defendant a warning citation for the traffic infraction. Lambert's K-9 alerted to defendant's vehicle in a manner which was consistent with the detection of the presence of controlled substances. Lambert consequently began to conduct a search of the vehicle and discovered a bag of what appeared to be methamphetamine in the center console of the vehicle. After

---

[1] The vehicle, a Ford Focus sedan, was registered to defendant's mother. For ease of reading, we shall refer to the vehicle as "defendant's vehicle."

handcuffing defendant and placing him under arrest, Maxwell collected all of the apparent drug-related items found in defendant's vehicle, including one large bag and several smaller bags of a white crystalline substance; a bag of a leafy green substance which Maxwell believed to be marijuana; a baggie of cotton balls; several syringes; rolling papers; and a lockbox or "camo safe"[2] containing, *inter alia*, several smoked marijuana blunts and a number of plastic baggies. Upon defendant's arrest, Maxwell informed defendant of his *Miranda* rights. Defendant then offered to provide information about "Haywood[ County]'s most wanted," a woman whom defendant claimed was involved in heroin trafficking and whom defendant represented that he was supposed to meet.

¶ 4 On 10 July 2017, defendant was indicted on charges of possession of methamphetamine, possession with intent to sell or deliver methamphetamine, possession of marijuana, possession of marijuana paraphernalia, and the attainment of habitual felon status. Defendant's case came on for trial during the 9 January 2018 Criminal Session of Superior Court, Buncombe County, Judge Gary M. Gavenus presiding. Defendant failed to appear when his case was called for trial, and as a result, his jury trial was conducted in absentia.

¶ 5 At trial, the State offered evidence from three witnesses: Maxwell, Lambert, and Deborah Chancey, a forensic analyst with the State Crime Lab. With regard to

---

[2] "Camo" is a shortened term for the word "camouflage."

the charge of possession with intent to sell or deliver methamphetamine, Chancey rendered expert testimony at trial that the white crystalline substance in the large plastic baggie was methamphetamine and that its weight was 6.51 grams. Maxwell testified that he had five years of law enforcement experience which was specifically focused on drug investigations. He further testified that a typical methamphetamine sale for personal drug use was usually between one-half of a gram to a gram, such that the tested amount of methamphetamine recovered from defendant's vehicle was somewhere between six and thirteen times the typical single use quantity. Maxwell also testified that he and Lambert had weighed two of the smaller baggies of the white crystalline substance on the date of defendant's arrest and measured the weights of those respective quantities—bags included—at 0.6 and 0.9 grams. The total weight of the methamphetamine and the untested crystalline substances recovered from defendant's vehicle was over 8 grams.

¶ 6     During his trial testimony, Maxwell opined that the baggies recovered from defendant's vehicle were consistent with those employed in drug sales. He and Lambert both acknowledged at trial that they did not recover cash from defendant's person or from defendant's vehicle, nor any cutting agents, scales, or business ledgers during the search of the vehicle. Both law enforcement officers also acknowledged that there was no evidence which they discovered during the vehicle search that would indicate that defendant was a high-level actor in the drug trade. With the

admission into evidence of the lockbox or "camo safe" and its contents, which included an unspecified number of plastic baggies consistent with the illegal sale of controlled substances, the jury was able to observe and to consider the number of plastic baggies as well as the other items which were recovered from defendant's vehicle. At the close of the State's evidence, defendant moved to dismiss the possession with intent to sell or deliver methamphetamine charge because the search of his person and his vehicle yielded "no cash, no guns, no evidence of a hand to hand transaction[,] . . . [n]o books, notes, ledgers, money orders, financial records, documents, . . . [and n]othing indicating that [defendant] is a dealer as opposed to a possessor or user[.]" Defendant also moved to dismiss the possession of marijuana paraphernalia charge and the charge of maintaining a vehicle. The trial court granted defendant's motion to dismiss the possession of marijuana paraphernalia charge but denied defendant's motion to dismiss the charge of possession with intent to sell or deliver methamphetamine. Defendant did not present any evidence and renewed his motion to dismiss the possession with intent to sell or deliver methamphetamine charge. The trial court again denied the motion.

On 11 January 2018, the jury returned verdicts of guilty on the charges of possession of methamphetamine, possession with intent to sell or deliver methamphetamine, possession of marijuana, and having attained habitual felon status. The trial court sentenced defendant on 29 January 2018 to concurrent

sentences of 128 to 166 months and 50 to 72 months in prison. Defendant gave notice of appeal in open court.

¶ 8     Before the Court of Appeals, defendant argued that the State did not prove that he had the intent to sell or deliver methamphetamine. The panel of the lower appellate court was divided on this question, with the majority rejecting defendant's position. *State v. Blagg*, 271 N.C. App. 276, 277 (2020). In reaching this result, the Court of Appeals majority considered the various circumstances relevant to defendant's intent and noted that defendant

> had more than six times, and up to 13 times, the amount of methamphetamine typically purchased. While it is possible that [d]efendant had 13 hits of methamphetamine solely for personal use, it is also possible that [d]efendant possessed that quantity of methamphetamine with the intent to sell or deliver the same. This issue is properly resolved by the jury.
>
> Moreover, the evidence also tended to show that [d]efendant had just left a residence that had been under surveillance multiple times for drug-related complaints. Defendant also admitted that he had plans to visit an individual charged with trafficking drugs. While [d]efendant's actions may be wholly consistent with an individual obtaining drugs for personal use, the jury could also reasonably infer that he had the intent to sell or deliver methamphetamine because of the quantity of drugs, the other circumstantial evidence, and his admission.
>
> . . . . The baggies in [d]efendant's possession are paraphernalia or equipment used in methamphetamine transactions. . . .

. . . .

    . . . . Standing alone, possession of the baggies may be innocent behavior. However, when viewed as a whole and in the light most favorable to the State, the jury could reasonably infer that baggies in [d]efendant's possession were used for the packaging and distribution of methamphetamine.

    The question here is not whether evidence that does not exist entitles [d]efendant to a favorable ruling on his motion to dismiss. That there may be evidence in a typical drug transaction that is non-existent in another case is not dispositive on the issue of intent. Instead, the question is whether the totality of the circumstances, based on the competent and incompetent evidence presented, when viewed in the light most favorable to the State, permits a reasonable inference that [d]efendant possessed methamphetamine with the intent to sell or deliver.

    In this type of case, where reasonable minds can differ, the weight of the evidence is more appropriately decided by a jury. Accordingly, the trial court did not err in denying the [d]efendant's motion to dismiss and submitting the case to the jury.

*Id.* at 281–82 (citations omitted).

¶ 9    The dissenting judge in the Court of Appeals disagreed, summarizing an opposing view that "the record evidence in this case shows nothing more than 'the normal or general conduct of people' who *use* methamphetamine; thus, the evidence, at most, 'raises only a suspicion . . . that [d]efendant had the necessary intent to sell and deliver' methamphetamine." *Id.* at 283 (McGee, C.J., dissenting) (first alteration in original) (quoting *State v. Turner*, 168 N.C. App. 152, 158–59 (2005)). On 4 June

2020, defendant filed a notice of appeal in this Court based upon the Court of Appeals dissenting opinion pursuant to N.C.G.S. § 7A-30(2) and N.C. R. App. P. 14(b)(1).

## II. Appellate Standards of Review

¶ 10    We review decisions of the Court of Appeals for errors of law. *State v. Melton*, 371 N.C. 750, 756 (2018).

> In ruling on a motion to dismiss, the trial court need determine only whether there is substantial evidence of each essential element of the crime and that the defendant is the perpetrator. Substantial evidence is the amount necessary to persuade a rational juror to accept a conclusion. In evaluating the sufficiency of the evidence to support a criminal conviction, the evidence must be considered in the light most favorable to the State; the State is entitled to every reasonable intendment and every reasonable inference to be drawn therefrom. In other words, if the record developed at trial contains substantial evidence, whether direct or circumstantial, or a combination, to support a finding that the offense charged has been committed and that the defendant committed it, the case is for the jury and the motion to dismiss should be denied. Whether the State presented substantial evidence of each essential element of the offense is a question of law; therefore, we review the denial of a motion to dismiss de novo.

*State v. Golder*, 374 N.C. 238, 249–50 (2020) (citations and extraneity omitted).

¶ 11    This Court has long acknowledged that

> [i]t is sometimes difficult to distinguish between evidence sufficient to carry a case to the jury, and a mere scintilla, which only raises a suspicion or possibility of the fact in issue. The general rule is that, *if there be any evidence tending to prove the fact in issue, or which reasonably conduces to its conclusion as a fairly logical and legitimate*

> *deduction*, and not merely such as raises a suspicion or
> conjecture in regard to it, the case should be submitted to
> the jury.

*State v. Earnhardt*, 307 N.C. 62, 66 (1982) (emphasis added; extraneity omitted)

(quoting *State v. Johnson*, 199 N.C. 429, 431 (1930)). Because "[e]vidence in the record

supporting a contrary inference is not determinative on a motion to dismiss," *State v.*

*Scott*, 356 N.C. 591, 598 (2002) (citing *State v. Fritsch*, 351 N.C. 373, 382 (2000)),

"[c]ircumstantial evidence may withstand a motion to dismiss and support a

conviction *even when the evidence does not rule out every hypothesis of innocence*,"

*State v. Stone*, 323 N.C. 447, 452 (1988) (emphasis added); *see also State v. Butler*,

356 N.C. 141, 145 (2002) ("To be substantial, the evidence need not be irrefutable or

uncontroverted; it need only be such as would satisfy a reasonable mind as being

'adequate to support a conclusion.' " (quoting *State v. Lucas*, 353 N.C. 568, 581

(2001))); *State v. Miller*, 363 N.C. 96, 99 (2009) (holding that "so long as the evidence

supports a reasonable inference of the defendant's guilt, a motion to dismiss is

properly denied even though the evidence also 'permits a reasonable inference of the

defendant's innocence.' " (quoting *Butler*, 356 N.C. at 145)). Courts considering a

motion to dismiss for insufficiency of the evidence "should not be concerned with the

weight of the evidence." *Earnhardt*, 307 N.C. at 67.

¶ 12        "Once the court decides that a reasonable inference of defendant's guilt may be

drawn from the circumstances, then it is for the jury to decide whether the facts,

taken singly or in combination, satisfy it beyond a reasonable doubt that the defendant is actually guilty." *Fritsch*, 351 N.C. at 379 (citations and extraneity omitted). "In borderline or close cases, our courts have consistently expressed a preference for submitting issues to the jury." *State v. Yisrael*, 255 N.C. App. 184, 193 (2017), *aff'd per curiam*, 371 N.C. 108 (2018).

## III.  Analysis

Defendant argues that the trial court erred in denying his motion to dismiss the charge of possession with intent to sell or deliver methamphetamine. He asserts that the Court of Appeals majority erred in failing to reverse the trial court outcome and to vacate his conviction for this offense. Specifically, defendant contends that the evidence introduced at trial was not sufficient to permit the charge to be submitted to the jury for consideration because the evidence was inadequate to permit the jury to reasonably infer that defendant possessed the methamphetamine discovered during the traffic stop with the intent to sell or deliver it. Defendant submits, and the dissent of the lower appellate court opines, that the evidence only supports the submission to the jury of the charged crime of possession of methamphetamine instead of the heightened indicted offense. We disagree.

Subsection 90-95(a)(1) of the General Statutes of North Carolina provides that it is unlawful for any person to "possess with intent to manufacture, sell or deliver, a controlled substance." N.C.G.S. § 90-95(a)(1) (2019). Methamphetamine is a

controlled substance. N.C.G.S. § 90-90 (2019). In order to prove that a defendant has committed the offense of possession with intent to sell or deliver a controlled substance such as methamphetamine, the State must present evidence of the defendant's (1) possession; (2) of a controlled substance; (3) with intent to sell or deliver the controlled substance. *Yisrael*, 255 N.C. App. at 187–88. Only the third of these elements—intent to sell or deliver the controlled substance methamphetamine—is at issue in this appeal.

¶ 15 We agree with the Court of Appeals that "in ruling upon the sufficiency of evidence in cases involving the charge of possession with intent to sell or deliver, . . . our case law demonstrates that this is a fact-specific inquiry in which the totality of the circumstances in each case must be considered unless the quantity of drugs found is so substantial that this factor—by itself—supports an inference of possession with intent to sell or deliver." *State v. Coley*, 257 N.C. App. 780, 788–89 (2018). In cases which focus on the sufficiency of the evidence of a defendant's intent to sell or deliver a controlled substance, direct evidence may be used to prove intent, but appellate courts must often consider circumstantial evidence from which the defendant's intent may be inferred. *Id.* at 786. Such an inference can arise from various relevant factual circumstances, including "(1) the packaging, labeling, and storage of the controlled substance, (2) the defendant's activities, (3) the quantity [of the controlled substance] found, and (4) the presence of cash or drug paraphernalia." *Id.* (quoting *State v.*

*Nettles*, 170 N.C. App. 100, 106, *disc. review denied*, 359 N.C. 640 (2005)). An example of drug paraphernalia which appellate courts such as ours have considered in determining intent to sell or deliver controlled substances is the presence of packaging materials, such as plastic baggies, which may be used to package individual doses of a controlled substance. *State v. Williams*, 307 N.C. 452, 457 (1983).

¶ 16 In establishing defendant's intent to sell or deliver in the present case, the State introduced evidence of the manner in which the methamphetamine was packaged, the manner in which the methamphetamine was stored, defendant's activities, the quantity of methamphetamine found, and the presence of drug paraphernalia. This combination of direct and circumstantial evidence satisfies the factors first articulated in *Nettles* which we hereby adopt to review a trial court's assessment of the sufficiency of the evidence to show a defendant's intent to sell or deliver a controlled substance, while meeting the standard of the existence of substantial evidence to compel the trial court's denial of defendant's motion to dismiss the charge of possession with intent to sell or deliver methamphetamine. In applying the long-established legal principles that the evidence must be considered in the light most favorable to the State upon a defendant's motion to dismiss a criminal charge, that the State is entitled to every reasonable inference from the evidence in the face of a defendant's motion to dismiss, and that evidence which supports a contrary inference is not determinative on a motion to dismiss, we determine that the trial

court properly and correctly denied defendant's motion to dismiss the charge of possession with intent to sell or deliver methamphetamine.

¶ 17      In illustration of our determination, we now apply these factors to the evidence presented at trial.

**A. Packaging of the Methamphetamine**

¶ 18      In his search of defendant's vehicle, Maxwell found one large bag and several smaller bags of a white crystalline substance. The laboratory analysis conducted upon the contents of the large bag showed that the substance was 6.51 grams of methamphetamine. While two of the smaller bags which contained the untested white crystalline substance were found by Maxwell and a fellow law enforcement officer, Lambert, to weigh a total of 1.5 grams, there was also an additional unspecified number of clear plastic baggies which Maxwell testified were consistent with the type which are used in the sale of packaged illegal controlled substances. Maxwell also testified that "[u]sually a seller will individually package the substance. Usually in anywhere from half a gram to one gram, depending on what the buyer is wanting. On occasion, they will weigh out and re-package it, and sell whatever the buyer is seeking."

¶ 19      In considering the evidence in the light most favorable to the State upon defendant's motion to dismiss the charge of possession with intent to sell or deliver methamphetamine, the matter of the original packaging of the verified

methamphetamine and the untested white crystalline substance discovered in defendant's vehicle, coupled with the presence of available additional packaging in the form of an undetermined number of clear plastic baggies which were deemed to be consistent with the sale of packaged illegal controlled substances, tends to support an inference that defendant intended to sell or deliver methamphetamine. Such packaging materials can be considered a relevant circumstance in determining intent to sell or deliver a controlled substance. *Williams*, 307 N.C. at 457.

**B. Storage of the Methamphetamine**

The methamphetamine was found in the center console of defendant's vehicle, according to trial testimony regarding the joint participation of Maxwell, Lambert, and the drug-sniffing K-9 in the search of the vehicle. Upon the admission of evidence during the presentation of the State's case that defendant had just left a residence which was under surveillance by law enforcement officers due to complaints of illegal drug activity at the home, that defendant had a pending meeting with someone whom he identified as a drug trafficker, along with other evidentiary aspects pertaining to the storage of the controlled substance in light of the totality of the circumstances, the trial court appropriately considered these facts in evaluating the sufficiency of the evidence to show that defendant had the required intent to sell or deliver methamphetamine.

**C. Defendant's Activities**

The activities of defendant contributed to the existence of substantial evidence which, in turn, amounted to a sufficient quantity of evidence to authorize the trial court's submission to the jury of defendant's charge of possession with intent to sell or deliver methamphetamine. Such activities included defendant's aforementioned endeavors of driving a vehicle to a residence which was under the surveillance of law enforcement officers for suspected illegal drug activity, entering the home and remaining inside its premises for a period of approximately ten minutes, committing to meet with someone whom he identified as an individual who was involved in illegal drug trafficking, and operating a vehicle which contained a large bag of a verified controlled substance and a host of items which could be readily associated with it.

**D. Quantity of Methamphetamine Found**

The evidence at trial showed that a total of more than 8 grams of a white crystalline substance was recovered from defendant's vehicle pursuant to the search of the car by law enforcement officers. Of this total, 6.51 grams was subjected to laboratory analysis and was identified as methamphetamine; the remaining quantity of the substance was not tested. As previously noted, during his trial testimony Maxwell stated that he observed, based on his training and experience, that a seller of methamphetamine will typically package the substance in a quantity ranging from one-half of a gram to a gram. Maxwell also testified that the unspecified number of

clear plastic baggies which were found in defendant's vehicle during the search was consistent with his experience "as to the dealing and transportation of methamphetamine."

¶ 23    We have previously acknowledged the arithmetic computation of the Court of Appeals majority in the decision which it rendered in this case that defendant "had more than six times, and up to 13 times, the amount of methamphetamine typically purchased," such that "[w]hile it is possible that [d]efendant had 13 hits of methamphetamine solely for personal use, it is also possible that [d]efendant possessed that quantity of methamphetamine with the intent to sell or deliver the same." *Blagg*, 271 N.C. App. at 281. Meanwhile, N.C.G.S. § 90-95(h)(3b) establishes that the minimum quantity of methamphetamine for trafficking in the controlled substance is 28 grams; the quantity of 6.51 grams of methamphetamine which was verified as existent and in the possession of defendant in the instant case is 23.3% of the threshold amount of trafficking in methamphetamine. In sum, the amount of methamphetamine at issue here is greater than the amount of the substance that the trial evidence associates with possession for one's personal use, yet lesser than the amount of the substance that the statutory law associates with trafficking for wider use.

¶ 24    The State is not required to disprove the possibility that the methamphetamine in defendant's possession was solely for personal use in order to

survive defendant's motion to dismiss. *See Fritsch*, 351 N.C. at 379 (holding that in order to survive a motion to dismiss the evidence need not "rule out every hypothesis of innocence" (quoting *State v. Stone*, 323 N.C. 447, 452 (1988))). The jury was eligible to draw the permissible inference from this amount of methamphetamine, in combination with the totality of the circumstances, that defendant had the intent to sell or deliver methamphetamine. *See, e.g., State v. McNeil*, 165 N.C. App. 777, 783 (2004) (upholding the denial of a motion to dismiss a charge of possession with intent to sell or deliver where the controlled substance—cocaine—was 19.64% of the minimum amount to sustain a trafficking charge and additional circumstances included its packaging in twenty-two individually wrapped pieces placed in the corner of a paper bag), *aff'd*, 359 N.C. 800 (2005).

¶ 25        Since the quantity of the methamphetamine found in defendant's possession was not dispositive of the issue concerning its presence for his personal use or its presence for his ability to sell or deliver the methamphetamine, we find that the trial court's adherence to the principle espoused in *Yisrael* to submit issues to the jury in borderline or close cases to be both prudent and proper.

**E. Presence of Cash or Drug Paraphernalia**

¶ 26        There was no currency which was recovered from defendant or from his vehicle as a result of the search. Likewise, items such as guns, cutting agents, scales, business ledgers, books, notes, money orders, financial records, documents, and

suspicious cellular telephone entries which are often associated with dealers of illegal drugs were not found by law enforcement officers in the course of the search. However, other items such as a "loaded" syringe, a bag of new syringes, a baggie of cotton balls, and other items were discovered during the search. The search also uncovered a lockbox or "camo safe" which was clandestinely kept in the back floorboard of defendant's vehicle and contained numerous clear plastic baggies similar to those that were found in the vehicle's center console; a variety of other items were also maintained in the container.

¶ 27 Just as any list of circumstances frequently considered on the issue of intent to sell or deliver a controlled substance is not exhaustive, the *absence* of any of those circumstances is likewise not dispositive. *See Yisrael*, 255 N.C. App. at 186, 193 (upholding denial of motion to dismiss where no baggies, scales, written ledgers, or other client information were found); *State v. Wilson*, 269 N.C. App. 648, 655 (2020) (upholding the denial of a motion to dismiss where no "cash, other drug paraphernalia, or tools of the drug trade—such as scales or additional baggies or containers—which have otherwise generally supported a conviction for" possession with intent to sell or deliver were presented); *Coley*, 257 N.C. App. at 789 (upholding denial of a motion to dismiss where scales and plastic baggies were discovered but only a small amount of marijuana was possessed and no written ledgers or other client information was found). Rather, the appropriate inquiry is a case-by-case, fact-

specific consideration in which the totality of the circumstances is evaluated in the light most favorable to the State and which gives the State the benefit of every reasonable inference which can be drawn from the evidence which is produced at trial. *Golder*, 374 N.C. at 249–50; *see also Coley*, 257 N.C. App. at 788. Thus, our focus must be upon the presence of evidence which *could* reasonably support an inference of defendant's possession of the methamphetamine with the intent to sell or deliver and not upon the absence of any hypothetical evidence which could have strengthened or added support to the State's case. *See, e.g., Earnhardt*, 307 N.C. at 67 (holding that reviewing courts "should not be concerned with the weight of the evidence" when considering the denial of a motion to dismiss).

## IV. Conclusion

The application of the factors which we employ in the present case, the "totality of the circumstances" standard in assessing the evidence presented in this case, and the fundamental principles governing the determination of a defendant's motion to dismiss with regard to the sufficiency of the State's evidence to support the charged offense lead us to conclude that the State presented sufficient direct and circumstantial evidence of defendant's intent to sell or deliver methamphetamine so as to compel us to affirm the decision of the Court of Appeals which found no error in defendant's trial.

AFFIRMED.

Justice BERGER did not participate in the consideration or decision of this case.

Justice EARLS dissenting.

The criminal offense of possessing a controlled substance is not the same offense as possessing a controlled substance with the intent to sell or deliver it to another person (PWISD). *Compare* N.C.G.S. § 90-95(a)(3) (2019) (making it unlawful for any person "[t]o possess a controlled substance"), *with* N.C.G.S. § 90-95(a)(1) (making it unlawful for any person "[t]o manufacture, sell or deliver, or possess *with intent* to manufacture, sell or deliver, a controlled substance" (emphasis added)). The Legislature chose to draw this distinction for a reason. This distinction has consequences. A defendant convicted under N.C.G.S. § 90-95(a)(1) is guilty of a Class C, Class G, or Class H felony, N.C.G.S. § 90-95(b), whereas a defendant convicted under N.C.G.S. § 90-95(a)(3) is guilty of a Class I felony or a misdemeanor, either of which typically carries a lighter sentence.

In concluding that the State has presented substantial evidence of defendant Charles Blagg's intent to sell or deliver methamphetamine, the majority collapses this distinction. In the process, the majority thwarts the Legislature's effort to tailor criminal liability to the nature of a defendant's alleged criminal conduct. The majority's decision also ensures that Blagg will spend ten to fourteen years in prison, having been convicted of a crime for which the evidence was so utterly lacking that the charge never should have been presented to the jury. Because the majority misinterprets and misapplies the substantial evidence test, I respectfully dissent.

## I.     Analysis

¶ 31     Every person who possesses any quantity of a controlled substance could intend to sell or deliver the drug to another person. At the same time, not every person who possesses a controlled substance intends to do anything other than use it for his or her own personal consumption. The determinative question in assessing a person's potential criminal liability is the person's intent. As we have often stated, "[i]ntent is a mental attitude seldom provable by direct evidence." *State v. Bell*, 285 N.C. 746, 750 (1974). A defendant's intent to sell or deliver a controlled substance must instead "ordinarily be proved by circumstances from which it may be inferred." *Id.* The issue is that possessing a controlled substance is, at least in theory, itself a "circumstance[ ] from which it may be inferred" that a person intends to sell or deliver a controlled substance. If the evidence sufficient to convict a defendant under N.C.G.S. § 90-95(a)(3) is always sufficient to convict a defendant under N.C.G.S. § 90-95(a)(1), then the Legislature's carefully drawn demarcation between two different statutory provisions is rendered obsolete.

¶ 32     The way we have handled this issue—at least until today—has been to require the State to present "substantial evidence" of the defendant's specific intent to sell or deliver the controlled substance he or she possessed. This evidence can be circumstantial, certainly, but it cannot merely be evidence common to any individual who possesses a controlled substance. Critically, the "substantial evidence" must be

evidence from which the jury could reasonably infer that the defendant intended to sell or deliver the controlled substance to another person. *See, e.g., State v. Williams*, 307 N.C. 452, 455 (1983). Evidence which is wholly consistent with a defendant's intention to personally consume the substance cannot, standing alone, be substantial evidence of the defendant's intent to sell or deliver it to someone else. If it were otherwise, every defendant who possessed a controlled substance could be charged, and potentially convicted, under either N.C.G.S. § 90-95(a)(1) or N.C.G.S. § 90-95(a)(3), a result which would be at odds with the Legislature's express intent. *See Landgraf v. USI Film Prods.*, 511 U.S. 244, 259 (1994) ("[A] court should give effect to every provision of a statute and thus avoid redundancy among different provisions.").

¶ 33        The substantial evidence test does not, as the majority correctly notes, require the State to "disprove the possibility that the methamphetamine in defendant's possession was solely for personal use." But the defendant does not bear the burden of disproving the State's theory of the case, either. It is not enough for the State to present evidence which, taken in the light most favorable to the State, establishes only that "[w]hile it is possible that [d]efendant had 13 hits of methamphetamine solely for personal use, it is also possible that [d]efendant possessed the quantity of methamphetamine with the intent to sell or deliver the same." (Alterations in original.) "Substantial evidence" requires "more than a scintilla or a permissible

inference." *Lackey v. N.C. Dep't of Hum. Res., Div. of Med. Assistance*, 306 N.C. 231, 238 (1982); *see also State v. Slaughter*, 212 N.C. App. 59, 68 (Hunter, J., dissenting) ("[E]vidence which *merely shows it possible for the fact in issue to be as alleged, or which raises a mere conjecture that it is so*, is an insufficient foundation for a verdict and should not be left to the jury." (emphasis added) (quoting *State v. Madden*, 212 N.C. 56, 60 (1937))), *rev'd per curiam for reasons stated in dissent*, 365 N.C. 321 (2011). It is obviously "possible" that Blagg intended to sell or deliver the methamphetamine he possessed to another person. Indeed, it is hard to imagine a circumstance where it would be "impossible" for a court to infer that a person apprehended while possessing some quantity of a controlled substance intended to sell or deliver it to another person. That is why we have always required substantial evidence of the defendant's specific intent to sell or deliver the controlled substance before allowing the case to proceed to the jury.

¶ 34        In this case, the evidence that Blagg intended to sell or deliver methamphetamine to another person just does not exist. Here are the facts actually established at trial: Blagg went to the home of a suspected drug dealer. He spent "approximately ten minutes" inside. As he was driving away from the home, he was pulled over for a moving violation. A K-9 officer noted the presence of narcotics near Blagg's vehicle. A (human) officer searched the vehicle and found plastic bags containing what proved to be 6.51 grams of methamphetamine and 1.5 grams of an

untested white crystalline substance. The officers also found syringes, cotton balls, an untested substance that resembled marijuana, and a small safe containing used marijuana blunts and a number of plastic baggies, all scattered about the vehicle. After he was arrested, Blagg told the officers he could help them track down "a female who was wanted for trafficking heroin or something of that nature."

People who personally consume methamphetamine obtain it from somewhere. Blagg's presence at a residence where drug dealing was suspected of occurring—and his apparent knowledge of who in his community is dealing drugs—suggests only that Blagg knows where and how to purchase methamphetamine, not that he is himself a drug dealer. Testimony established that methamphetamine is typically sold in plastic baggies. It follows as a matter of logic that the manner in which a product is typically sold is also the manner in which it is typically purchased. The fact that Blagg had some number of plastic baggies in his vehicle says nothing about *why* he obtained methamphetamine.[1] Testimony also established that cotton balls and syringes are used for injecting methamphetamine. This says nothing about *who* the intended user of the methamphetamine is. And individuals who possess controlled substances for any reason have good reason to conceal their stash. The point is not that the evidence

---

[1] If a person were observed at a store purchasing a gallon of milk and then some empty milk containers were found in that person's car, would that be substantial evidence that the person is selling or delivering milk to other people? Or would the empty milk containers be evidence that the person likes to drink milk?

in the record excludes the possibility that Blagg intended to sell or deliver methamphetamine to another person. The point is that substantial evidence requires more than a mere possibility that something could, maybe, conceivably be true.

Everything the majority relies upon beyond the evidence described above—such as its assertion that "the amount of methamphetamine at issue here is greater than the amount of the substance that the trial evidence associates with possession for one's personal use"—is pure speculation. Worse, it is exactly the same speculative reasoning that the trial court explicitly prohibited the State from engaging in during the sole portion of a criminal proceeding where factfinding is typically permitted, the trial. What a given quantity of a controlled substance found in a person's possession reveals about that person's intent is "a matter familiar only to those who regularly use or deal in the substance[ or] who are engaged in enforcing the laws against it," not an inference a jury can draw based upon its own "general knowledge and experience." *State v. Mitchell*, 336 N.C. 22, 30 (1994), *abrogated on other grounds by State v. Rogers*, 371 N.C. 397 (2018). The trial court did not permit the State to argue that the amount of methamphetamine found in Blagg's vehicle signified his intent to sell or deliver it because there was "no evidence as to [the amount of methamphetamine being] more than [for] personal use. Absolutely none. [The State] never elicited that testimony from the officer. . . . There was no testimony as to that. None." Apparently, on this matter, the majority knows better than the trial court,

even though there is "[a]bsolutely no[ ]" evidence in the record telling us what possessing 6.51 grams of methamphetamine implies. We may not always like the facts as established by the trial court but, as appellate jurists, we are not at liberty to find our own. *Desmond v. News & Observer Publ'g Co.*, 375 N.C. 21, 44 n.16 ("Were we to . . . make our own factual determinations on the evidence . . . we would impermissibly invade the province of the jury . . . ."), *reh'g denied*, 376 N.C. 535 (2020).

¶ 37        Lacking what is typically required to support a legal inference drawn from the quantity of methamphetamine at issue—evidence in the record—the majority casts about for something else. It lands on math. According to the majority, 6.51 grams is both "more than six times, and up to 13 times, the amount of methamphetamine typically purchased" and "23.3% of the threshold amount of trafficking in methamphetamine." This calculation is not substantial evidence of PWISD. The only evidence in the record supporting the first half of the equation is Detective Maxwell's testimony that "[u]sually a seller will individually package [methamphetamine] . . . in anywhere from half a gram to one gram." His testimony does nothing to establish how much or how many packages an individual user of methamphetamine might typically purchase for personal consumption in a single transaction. Nor does Maxwell's testimony include any statement supporting the majority's unfounded conclusion that "a typical methamphetamine sale *for personal drug use* [i]s usually between one-half of a gram to a gram." (Emphasis added.) His testimony solely

addresses how a seller typically packages methamphetamine, not a buyer's purchasing habits or preferences. Regardless, Maxwell explicitly qualified his statement by noting that a seller might package methamphetamine in different quantities "depending on what the buyer is wanting."

¶ 38          Further, the majority's reliance on the trafficking threshold amount as proof of Blagg's intent is an unjustified stretch of our precedents. The very purpose of a threshold amount is to establish the point beyond which the amount possessed becomes legally salient. Although we have previously described the quantity of a controlled substance in a defendant's possession in relation to the trafficking threshold amount, in that case, the amount considered "more than an individual would possess for his personal consumption" and relevant to the defendant's intent to sell or deliver was over two-thirds the amount required to support a conviction for trafficking. *Williams*, 307 N.C. at 457. The majority does not explain why 23.3% of the trafficking threshold amount is substantial enough to support a PWISD conviction. Without an explanation, there is no way to predict whether possessing 15% of the threshold quantity, or 5% of the threshold quantity, would be indicative of a defendant's intent to sell or deliver a controlled substance. The majority's reasoning leaves defendants and lower courts to guess the point beyond which possessing a quantity of a controlled substance less than the statutory threshold amount heightens a defendant's potential criminal liability.

¶ 39    The State presented no testimony or evidence regarding how much methamphetamine an individual user typically consumes in a single sitting, the number of doses a single purchase typically covers, or how frequently a regular consumer of methamphetamine purchases and uses the drug. Absent any of this necessary context, the fact that Blagg possessed 6.51 grams of methamphetamine is meaningless, beyond establishing that Blagg possessed methamphetamine in a quantity insufficient to sustain a trafficking charge.

¶ 40    The majority's rejoinder is that while the quantity of methamphetamine Blagg possessed is "not dispositive," it is still evidence of Blagg's intent to sell or deliver methamphetamine "in combination with the totality of the circumstances," at least when viewed in the light most favorable to the State. Again, those circumstances do nothing to distinguish Blagg from any other individual who purchases methamphetamine exclusively for personal consumption. As the majority acknowledges, "items such as guns, cutting agents, scales, business ledgers, books, notes, money orders, financial records, documents, and suspicious cellular telephone entries which are often associated with dealers of illegal drugs were not found by law enforcement officers in the course of the search."

¶ 41    The majority then goes on to cite various cases in which this Court or the Court of Appeals concluded that the State had presented substantial evidence of a defendant's intent to sell or deliver in purportedly similar circumstances as presented

here. Yet in each of those cases, the record disclosed that the defendant had been found with or done something unusual for a person solely intending to personally consume the controlled substance. The defendant in *Yisrael* "was carrying a large amount of cash ($1,504.00) on his person" in small denominations when he was apprehended "on the grounds of a high school while possessing illegal drugs" with a stolen and loaded handgun inside his vehicle. *State v. Yisrael*, 255 N.C. App. 184, 190 (2017). The defendant in *Wilson* "attempted to hide the larger amount of cocaine while leaving the smaller corner bag—associated with only personal use—in plain view." *State v. Wilson*, 269 N.C. App. 648, 655, *review denied*, 376 N.C. 532 (2020). The defendant in *Coley* was found with marijuana, "a digital scale[,] and an open box of sandwich bags." *State v. Coley*, 257 N.C. App. 780, 789 (2018). The defendant in *Williams* was in constructive possession of a residence where drug sales were proven to have occurred, *Williams*, 307 N.C. at 456, and his fingerprints were found on one of many "tinfoil squares, a material frequently used to package heroin for sale," found inside, *id.* at 457. Invoking the totality of the circumstances is no substitute for the State's burden to present substantial evidence of Blagg's intent to sell or deliver methamphetamine. The cases relied upon by the majority all included additional facts inconsistent with possession merely for personal use.

Perhaps anticipating the harsh consequences of its gloss on the substantial evidence test, the majority emphasizes that it is not the ultimate arbiter of Blagg's

guilt. The majority explains that it finds "the trial court's adherence to the principle

. . . to submit issues to the jury in borderline or close cases to be both prudent and

proper." Yet our responsibility for ensuring fair and equal application of the law in

all cases is not discharged by references to the role of the jury as factfinder. It requires

us to consistently apply the law as enacted by the Legislature and interpreted though

our precedents.

¶ 43        Finally, the majority's analysis does not clearly identify the basis for its

holding. According to the majority, "[j]ust as any list of circumstances frequently

considered on the issue of intent to sell or deliver a controlled substance is not

exhaustive, the *absence* of any of those circumstances is likewise not dispositive."

What the majority appears to be saying is that even if prior cases have enumerated

factors determined to be indicative of a defendant's intent to sell or deliver a

controlled substance, when confronted with a case in which none of those factors are

present, a court may choose to redefine the test to include new factors. This manner

of deciding cases is out of step with our traditional respect for precedent.

> The doctrine of stare decisis, commonly called the "doctrine
> of precedents," has been firmly established in the law . . . .
> It means that we should adhere to decided cases and
> settled principles, and not disturb matters which have been
> established by judicial determination. The precedent thus
> made should serve as a rule for future guidance in deciding
> anal[o]gous cases . . . . This is not only a sensible, but a just,
> principle, and a contrary rule would manifestly be
> inequitable. . . . We have repeatedly said that the
> weightiest reasons make it the duty of the court to adhere

to its decisions.

*Hill v. Atl. & N.C. R.R. Co.*, 143 N.C. 539, 573–75 (1906). As we have long recognized, judicial inconstancy comes at a cost to litigants and to our institutional legitimacy.

¶ 44    Because the majority's decision lends the erroneous impression that any time a defendant is charged with possession of a controlled substance pursuant to N.C.G.S. § 90-95(a)(3), there is substantial evidence that the defendant possessed the substance with the intent to sell or deliver it to another person within the meaning of N.C.G.S. § 90-95(a)(1), I respectfully dissent.

Justice HUDSON joins in this dissenting opinion.